1   JONATHAN WEISSGLASS (185008)
    LINDA LYE (215584)
2   Altshuler Berzon LLP
    177 Post Street, Suite 300
3   San Francisco, California 94108
    Telephone: (415) 421-7151
4   Facsimile: (415) 362-8064
    jweissglass@altshulerberzon.com
5   llye@altshulerberzon.com

6   Attorneys for Plaintiffs International
    Union, United Automobile, Aerospace and Agricultural
7   Implement Workers of America, Local 2244,
    and International Union, United Automobile,
8   Aerospace and Agricultural Implement Workers
    of America
9

10

11              UNITED STATES DISTRICT COURT FOR THE

12                 NORTHERN DISTRICT OF CALIFORNIA

13

14  INTERNATIONAL UNION, UNITED          )   Case No. C-08-1242-TEH
    AUTOMOBILE, AEROSPACE AND            )
15  AGRICULTURAL IMPLEMENT WORKERS       )   **PLAINTIFFS' NOTICE OF**
    OF AMERICA, LOCAL 2244, and          )   **MOTION AND MOTION FOR**
16  INTERNATIONAL UNION, UNITED          )   **SUMMARY JUDGMENT AND/OR**
    AUTOMOBILE, AEROSPACE AND            )   **MOTION TO COMPEL**
17  AGRICULTURAL IMPLEMENT WORKERS       )   **ARBITRATION AND CONFIRM**
    OF AMERICA,                          )   **ARBITRATION AWARDS, AND**
18                                       )   **MEMORANDUM OF POINTS AND**
                 Plaintiffs,             )   **AUTHORITIES IN SUPPORT OF**
19                                       )   **MOTION FOR SUMMARY**
         v.                              )   **JUDGMENT AND/OR MOTION TO**
20                                       )   **COMPEL ARBITRATION AND**
    NEW UNITED MOTOR MANUFACTURING,      )   **CONFIRM ARBITRATION**
21  INC.,                                )   **AWARDS**
                                         )
22               Defendant.              )
                                         )
23  _____  )

24                                           Date:  May 19, 2008
                                             Time:  10:00 a.m.
25                                           Place: Courtroom 12, 19th Floor
                                                    The Hon. Thelton E. Henderson
26

27

28

1  **NOTICE OF MOTION AND MOTION**

2  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, NOTICE IS**

3  **HEREBY GIVEN THAT** on May 19, 2008, at 10:00 a.m., in Courtroom 12, 450 Golden Gate

4  Avenue, 19th Floor, San Francisco, California, Plaintiffs will and hereby do move the Court

5  pursuant to F.R.C.P. 56 for summary judgment on their claims pursuant to Section 301 of the

6  Labor Management Relations Act, 29 U.S.C. §185, and in the alternative move the Court for an

7  order compelling arbitration, designating a method for a substitute arbitrator, and confirming

8  two arbitration awards pursuant to the Federal Arbitration Act.  This motion is brought on the

9  ground that defendants are entitled to judgment as a matter of law and is based upon this Notice

10  of Motion and Motion, this Memorandum of Points and Authorities, the complete files and

11  records in this action and the related action CV-08-0976 TEH, and on such other argument or

12  evidence as may be presented at or before the time of hearing.

13  Dated:  April 14, 2008                    Respectfully submitted,

14                                            JONATHAN WEISSGLASS
                                              LINDA LYE
15                                            Altshuler Berzon LLP

16

17
                                              By:   /s/Linda Lye
18                                                     Linda Lye

19                                            Attorneys for Plaintiffs  International
                                              Union, United Automobile, Aerospace and
20                                            Agricultural Implement Workers of America,
                                              Local 2244 and International Union, United
21                                            Automobile, Aerospace and Agricultural
                                              Implement Workers of America.
22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3  I.     INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . .  1

4  II.    FACTUAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

5         A.     The Parties And Their Collective Bargaining Agreement . . . . . . . . . . . . . . . .  2

6         B.     The Underlying Contract Dispute And The Union's Grievance  . . . . . . . . . . . .  3

7         C.     The Arbitrator's Rulings On The Merits Of The Union's Grievance  . . . . . . . .  4

8         D.     The Company's Refusal To Arbitrate Or To Recognize The Validity
                 Of The Arbitration Awards  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
9

10 III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

11        A.     Federal Policy Strongly Favors Arbitration, Especially Of Labor
                 Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

12        B.     The Court Should Issue An Order Compelling The Company To
                 Arbitrate Remedy Issues Arising From The Union's Grievance Because
13               The Arbitration Clause Covers The Parties' Dispute . . . . . . . . . . . . . . . . . . . . 11

14               1.     NUMMI Should Be Ordered To Arbitrate Under Section 301  . . . . . . 10

15               2.     The FAA Also Requires NUMMI To Arbitrate The Remaining
                        Remedy Issues Arising From The Union's Grievance . . . . . . . . . . . . . 14
16
          C.     The Court Should Confirm The Two Merits Rulings Issued By
17               The Arbitrator  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18               1.     Under The FAA, The Court *Must* Confirm The Arbitration
                        Awards Unless They Are Vacated . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
19
                 2.     The Narrow Exceptions For Vacating A Labor Arbitration
20                      Award Under Section 301 Do Not Apply  . . . . . . . . . . . . . . . . . . . . . 20

21 IV.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Abernathy v. Southern California Edison*,
   885 F.2d 525 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*AT&T Technologies, Inc. v. Communication Workers of America*,
   475 U.S. 643 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Assn. of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.*,
   221 F.3d 1085 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Astra Footwear Indus. v. Harwyn Int'l, Inc.*,
   442 F.Supp. 904 (S.D.N.Y. 1978),
   *aff'd*, 578 F.2d 1366 (2d Cir. 1978) (unpub.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Barnes v. Logan*,
   122 F.3d 820 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Circuit City v. Adams*,
   532 U.S. 105 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Edna H. Pagel, Inc. v. Teamsters Local Union 595*,
   667 F.2d 1275 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hall Street Assocs., LLC v. Mattel, Inc.*,
   _U.S._, 2008 WL 762537 (Mar. 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Hart Surgical, Inc., v. Ultravision, Inc.*,
   244 F.3d 231 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Line Drivers, Pickup and Delivery Local Union No. 81 v. Roadway Express Inc.*,
   152 F.3d 1098 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Local Union No. 370 v. Morrison-Knudsen Co., Inc.*,
   786 F.2d 1356 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lufau v. Affiliated Computer Servs., Inc.*,
   2006 WL 2619365 (N.D. Cal. Sept. 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McGuire, Cornwell & Blakey v. Grider*,
   771 F. Supp. 319 (D. Colo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Millmen Local 550 v. Wells Exterior Trim*,
   828 F.2d 1373 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nghiem v. NEC Electronic, Inc.*,
   25 F.3d 1437 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Poweragent, Inc. v. Electronic Data Systems Corp.*,
   358 F.3d 1187 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Reddam v. KPMG LLP*,
   457 F.3d 1054 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Roderick v. Mazzetti & Assocs., Inc.*,
   2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Sheet Metal Workers Int'l Assn Local Union No. 359 v. Madison Indus., Inc. of Ariz.*,
   84 F.3d 1186 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18, 22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Food and Commercial Workers, Local 588 v. Foster Poultry Farms*,
   74 F.3d 169 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United Food & Commercial Workers Union, Local 770 v. Geldin Meat Co.*,
   13 F.3d 1365 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United Food & Commercial Workers Union v. Alpha Beta Co.*,
   736 F.2d 1371 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United Steelworkers of America v. American Mfg. Co.*,
   363 U.S. 564 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*United Steelworkers of America v. Enterprise Wheel and Car Corp.*,
   363 U.S. 593 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 21

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 14

*Zechman v. Merrill Lynch, Pierce, Fenner & Smith*,
   742 F. Supp. 1359 (N.D. Ill. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES AND REGULATIONS

9 U.S.C.
   §§1 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   §4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   §5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18
   §9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19, 20

29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3    The plaintiffs, an international union and its local affiliate (collectively, "the Union")

4    and defendant, New United Motor Manufacturing, Inc. ("NUMMI" or "the Company"), the

5    employer of the employees represented by the Union, are parties to a collective bargaining

6    agreement ("CBA") that contains a binding arbitration clause.  Plaintiffs seek to hold the

7    Company to its contractual promise to arbitrate disputes.  The strong federal policy favoring

8    arbitration, particularly arbitration of labor disputes, recognized over forty years ago by the

9    Supreme Court in the "*Steelworkers* Trilogy," requires this Court to enforce that promise.  *See*

10    *United Steelworkers of America v. American Mfg. Co*., 363 U.S. 564 (1960); *United*

11    *Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United*

12    *Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593 (1960).

13    In fall 2005, the Company implemented a new sick leave policy pursuant to which it

14    terminated approximately 100 employees who were at the time on a sick leave of absence.  The

15    Union filed a grievance challenging the new policy.  The parties submitted the dispute to

16    arbitration under the CBA's dispute resolution mechanism.  The parties bifurcated the

17    proceedings into a merits phase and a remedy phase.  At the Company's behest, the merits

18    phase was itself broken into two hearings because the Company insisted on separate hearings to

19    decide each of the two main merits issues, as a result of which it took one additional year to

20    resolve the merits of the grievance.

21    Ultimately, the arbitrator ruled for the Union on the merits of its grievance and found

22    that the Company's policy – and its termination of employees pursuant to that policy – violated

23    the parties' CBA.  In ruling on the merits, and at the Company's behest, the arbitrator did not

24    address any remedy issues.  Instead, the arbitrator reserved remedy issues for further arbitration

25    proceedings, and encouraged the parties to settle remedy issues but specified that both parties

26    retained the right to arbitrate unresolved remedy issues.

27    The parties did not reach an agreement on the remedy issues.  The Union therefore

28    demanded that the parties return to arbitration to resolve the outstanding remedy issues.  The

1    Company refused to do so, just as it has refused to reinstate the approximately 100 employees

2    whose terminations the arbitrator found to violate the CBA.  The Company now takes the

3    position that the arbitration awards finding it to have violated the CBA are invalid.  Indeed, the

4    Company has filed an action to vacate those awards.  Having insisted that the arbitrator *not* rule

5    on any remedy issues, the Company now has the temerity to argue that the arbitrator's awards

6    should be vacated *because* he did not rule on any remedy issues.  As explained more fully in the

7    Union's opposition to the Company's petition to vacate the awards, that petition is a transparent

8    attempt by the Company to vacate unfavorable arbitration awards and to thwart the Union's

9    efforts to enforce the collective bargaining agreement.

10    At every turn, the Company has sought to delay resolution of the parties' contractual

11    dispute and to avoid its contractual obligations.  The Union therefore seeks to compel the

12    Company to arbitrate the remaining remedy issues arising from the Union's grievance in an

13    expeditious manner, and to confirm the arbitration awards already issued.  The strong federal

14    policy favoring labor arbitration demands that this Court put an end to NUMMI's

15    gamesmanship.

16    **II.    FACTUAL BACKGROUND**

17    Although the merits of the underlying contract dispute between the parties is not at issue

18    in this case, we provide a brief summary for context.

19    **A.    The Parties And Their Collective Bargaining Agreement**

20    The International Union, United Automobile, Aerospace and Agricultural Implement

21    Workers of America, and its local affiliate, International Union, United Automobile, Aerospace

22    and Agricultural Implement Workers of America, Local 2244, are parties to a collective

23    bargaining agreement with NUMMI.  Declaration of Earlie Mays ISO Mot. for Summ. Jmt.

24    ("Mays Declaration"), Exhibit A at 1 (CBA, Art. 1, §1.1).

25    The CBA contains a dispute resolution mechanism that culminates in "final and

26    binding" arbitration.  *Id*. at 23 (CBA, Art. X, §8); *see also id*. at 18-25 (CBA, Art. X., §§1-11).

27    The CBA's dispute resolution mechanism covers any dispute "concerning the interpretation or

28

1    application of any terms of this Agreement, or any other work-related problem." *Id*. at 18

2    (CBA, Art. X, §1.1).

3        The CBA contains several provisions pertaining to sick leave. *Id*. at 65-66 (Art. XXIII,

4    §§9.1-9.5).  The underlying contract dispute between the parties centers on the sick leave

5    provision referred to by the parties as the "time for time" clause, "based on the notion that the

6    amount of sick leave, for most employees, is equivalent to the employee's work 'time'

7    (seniority)."  Mays Decl., Exh. B at 4.

8        **B.    The Underlying Contract Dispute And The Union's Grievance**

9        In fall 2005, the Company implemented a new sick leave policy pursuant to which it

10   terminated the sick leave of employees whose medical condition had become permanent, even

11   if they had not yet been on sick leave for the full length of their "time for time" period. *Id*. at

12   11. The Company contended that its new policy was justified by an old 1990 arbitration

13   decision by arbitrator Paul Staudohar.  *Id*. at 10-11; *id*., Exh. C at 6. The Company

14   acknowledged, however, and the parties stipulated, that after the 1990 Staudohar arbitration

15   decision and until fall 2005, the Company had always allowed employees to remain on sick

16   leave for their full "time for time" period and had never before used the status of an employee's

17   medical condition (*i.e.*, whether it was permanent or temporary) as a trigger for terminating sick

18   leave. *Id*., Exh. B at 10; *id*., Exh. C at 4-5.  Pursuant to its new policy, the Company terminated

19   approximately 100 employees who were on sick leave but whose "time for time" leave had not

20   yet expired. *Id*. at 7.

21       The Union challenged the Company's new sick leave policy by filing a grievance under

22   the CBA's dispute resolution mechanism.  The matter was submitted to arbitrator Charles

23   Askin for arbitration.  *Id*., Exh. B at 11; *id.*, Exh. C at 7.

24       The parties stipulated that "all requirements of the grievance procedure have either been

25   met or waived" and that the matter was properly submitted to arbitrator Askin "for a final

26   binding arbitration."   Decl. of Linda Lye ISO. Mot. for Summ. Jmt. ("Lye Decl."), Exh. A at

27   14:15-22; *id.*, Exh. B at 275:12-21.

28

**C.    The Arbitrator's Rulings On The Merits Of The Union's Grievance**

As is typical, the parties bifurcated the proceedings, first addressing the merits of the Union's grievance, and reserving remedy for a later phase, if necessary. *Id.*, Exh. A at 36:23-25 (Company counsel: "In terms of remedy process, we were going to save that for another day which is the usual process."); *id*. at 37:7-9 (Company counsel: "If there's a remedy, we come back and handle the remedy aspect of the case, which is typical.").] The parties stipulated to the arbitrator retaining jurisdiction over remedy. *Id.* at 14:24-15:3; *id.*, Exh. C at 295:4-8.

In what became the first of two proceedings on the merits of the grievance, the Union took the position that (1) the Company's new sick leave policy violated the parties' CBA, *viz.*, the right to be on sick leave for the full length of an employee's "time for time" clock ("contract issue"), and (2) that the 1990 Staudohar decision did not authorize the Company's new sick leave policy ("Staudohar issue"). *Id.*, Exh. A at 21:11-22, 32:11-22; *id.*, Exh. D at 14, 24; *id.*, Exh. E at 1-11. The Union also raised remedy issues that presented questions of contract interpretation. *Id.*, Exh. A at 36:18, 37:18-22. Specifically, the Union sought a ruling on the proper method for calculating the length of an employee's "time for time" clock. *Id.* at 41:11-13; 43:11-12.[1] The Union acknowledged that most remedy issues should be reserved for a later phase, but sought a ruling on the methodology question because it involved an "overarching" "legal issue." *Id.*, Exh. B at 272:2-23; *id.*, Exh. D at 34-35 (contending that arbitrator should address "at this juncture," certain "overarching" remedy issues, including the proper method for calculating the length of an employee's "time for time" clock, but acknowledging that most remedy issues should be reserved for a later juncture).

The Company, however, took the position that the "sole issue" before the arbitrator was the Staudohar issue. *Id.*, Exh. F at 34. NUMMI contended that the contract issue was not

---

[1] The Union sought (and continues to seek) as a remedy in the case, among other things, that any employees improperly terminated pursuant to the Company's new sick leave policy be reinstated and allowed to remain on sick leave status for the remainder of their "time for time" clock. *Id.* at 38:7-19; 44:16-25. As part of the remedy issues, the Union therefore sought a ruling from the arbitrator on how the length of an employee's time for time leave should be calculated. *Id.* at 41:11-13; 43:11-12.

1    properly before the arbitrator. *Id.* at 17 n.3, 30, 32 n.7; *id.*, Exh. G at 2-3. The Company's

2    position was that if the Union prevailed on the Staudohar issue, then "the parties would have to

3    arbitrate the [contract] issue de novo." *Id.*, Exh. F at at 34.

4            In his opinion and award, issued on November 24, 2006, the arbitrator carefully limited

5    his ruling to address only the issue on which there was a "mutual understanding of the scope of

6    authority granted to [him]." Mays Decl, Exh. B at 16:22. Based on the Company's narrow

7    view of the arbitrator's jurisdiction, arbitrator Askin reached only the Staudohar issue, which

8    both parties agreed he had the authority to reach. *Id.* at 16:22-17:11. With the benefit of two

9    days of hearing, at which the parties "were given full opportunity to examine and cross-examine

10   witnesses and to introduce relevant exhibits," as well as opening and closing briefs from each

11   party, the arbitrator agreed with the Union that the Company's sick leave policy was not

12   justified by the Staudohar decision and ordered a further hearing on the contract issue. *Id.* at 1,

13   20-21.

14           In the second merits proceeding, the Union sought to address two issues: (1) the

15   unresolved contract question of whether the Company's sick leave policy violated the parties'

16   CBA and (2) the proper methodology for calculating the length of the "time for time" sick

17   leave. Lye Decl., Exh. C at 288:18-290:4. The Company again objected to including the

18   methodology question because "that seems more like a remedy issue." *Id.* at 294:3-4.

19           Because the parties were unable to agree on the statement of issues, they stipulated to

20   "authorizing the Arbitrator to frame the issue in this proceeding." *Id.* at 296:10-16.

21           The arbitrator then provided a lengthy and careful description of his arbitration

22   "philosophy," pursuant to which he will only reach issues on which there is a "mutual

23   delegation of authority" and he will refrain from reaching any issue that is "beyond the scope of

24   the authority" given to him by "both parties." *Id.* at 298:11, 299:15-22. He explained that he

25   applied this philosophy to the prior phase of the arbitration, in which the Company had a

26   "narrow interpretation" of the issues submitted to him but the Union had a "broad view." *Id.* at

27   299:3-8. Even though he thought the Union's broader interpretation of the issues before him

28   was "the common sense" view, he "refrained from issuing a decision with regard to" the

broader set of issues because he "viewed it as being beyond the scope of the authority that both parties had given me." *Id*. at 299:18-25; *see also id*. at 299:15-18 ("I focused on that area that both parties had agreed upon, which in my view represented a mutual delegation of authority to decide that issue.").

Applying this arbitration philosophy – that he can only decide issues on which there is a mutual delegation of authority – the arbitrator then explained that he would not reach the methodology question raised by the Union "in this proceeding" because the Company "has not elected to give me the authority to do that" and that the methodology "issue should be handled in what I'm going to call the remedy or liability" proceeding. *Id*. at 301:8-14, 303:14-21; *see also id*. at 306:15-18.[2]

Based on the arbitrator's framing of the issues at the outset of the hearing, the Union did not address the remedy/methodology issue "in this stage of the proceedings." *Id*., Exh. H at 27 n.9.

In his opinion and award, issued on November 20, 2007, the arbitrator agreed with the Union that the Company's new sick leave policy violated employees' sick leave rights under the CBA to "time for time" leave:

> [T]he Employer violated the Collective Bargaining Agreement by implementing a new policy regarding long-term leaves of absence that terminated "time for time" sick leave entitlement before the "maximum period set forth" in Section 9.3, and by terminating employees whose entitlement to time for time leave had not been exhausted. [Mays Decl., Exh. C at 23.

The arbitrator also stated that, in light of NUMMI's narrow view of the issues that were to be decided "at this stage of the dispute," "any determination of an appropriate remedy . . . would be deferred to a later proceeding." *Id*. at 23 n.6 (emphasis added).

Arbitrator Askin then "encouraged" the parties to negotiate a resolution of "the appropriate remedy, and all other outstanding issues arising from the subject grievance," but specified that "[b]oth parties shall retain the right to seek arbitral resolution of any outstanding

---

[2] Arbitrator Askin used the terms "liability" and "remedy" as synonyms for the next phase of the proceedings. He referred to the "merits" question as the "substantive issue." *Id*. at 301:15-17.

1   remedial issues." *Id*. at 23 & n.7. He stated that although "[t]he parties authorized [him] to

2   retain jurisdiction of the remedy," he "respectfully declines that delegation of authority." *Id*. at

3   23 n.7. As a result, any further arbitration would be "before a different arbitrator, who shall be

4   selected by mutual agreement or selected in accordance with the parties' customary method of

5   selecting an arbitrator." *Id*. at 23.

6   Under the method of selecting an arbitrator set forth in the parties' CBA, the parties

7   request a list of seven arbitrators from the American Arbitration Association ("AAA") and then

8   select an arbitrator from the list. Mays Decl., Exh. A at 21-22 (CBA Art. 10, §§6.1-6.2).

9   **D.   The Company's Refusal To Arbitrate Or To Recognize The Validity Of The**

10      **Arbitration Awards**

11      The arbitrator issued his second award on November 20, 2007. *Id*., Exh. C at 23. One

12   week later, the Union wrote to the Company requesting a meeting to discuss implementation of

13   the remedy in light of the arbitrator's ruling that the Company's new sick leave policy violated

14   the CBA. *Id.*, Exh. D. The Union outlined its position regarding the remedy and stated that

15   "we should be able to resolve the remedy in this matter promptly without the need for resort to

16   arbitration. If, however, we are not able to arrive at a suitable resolution on remedy by January

17   15, 2007, the Union will seek arbitral resolution of any outstanding issue, to ensure that our

18   members' right to obtain relief is fully protected." *Id.*

19      On December 4, 2007, the Union again wrote to the Company demanding "prompt

20   implementation of the remedy in the time for time matter," and stating that, although "[t]he

21   Union believes we should be able to resolve remedy issues without the need to return to

22   arbitration," "the Union will seek arbitral resolution of the remedy issues unless we are able to

23   reach resolution by January 15, 2008." *Id.*, Exh. E.

24      The parties did not reach resolution on the remedy issues by January 15, 2008. Mays

25   Decl. at ¶9.

26      On January 14, 2008, counsel for the Union informed counsel for the Company that

27   because the parties had not reached resolution on the remedy issues, the Union would request a

28

1    list of arbitrators from AAA the next day pursuant to the Union's earlier correspondence. Lye

2    Decl. at ¶11 & Exh. J.

3          On January 15, 2008, the Union sent a request to AAA requesting a list of seven

4    potential arbitrators to arbitrate a dispute "over the determination of the appropriate remedy,

5    and all other outstanding issues arising from, a contract grievance filed by the Union." *Id*. at

6    ¶12 & Exh. K.

7          AAA provided the Company and the Union with a list of seven arbitrators in a letter

8    dated January 22, 2008. *Id*. at ¶13 & Exh. L.

9          In a letter dated January 22, 2008, the Company's counsel made clear that NUMMI

10   would not proceed to arbitration. It took the position that, "without waiving any objections

11   NUMMI may have to the Askin opinion, [the Union's] unilateral decision to solicit AAA

12   arbitrators is not consistent with that opinion," and "as these circumstances have never come up

13   before, there is not a customary method of picking an arbitrator in this type of situation." The

14   Company further stated: "without waiving any objections to the opinion, NUMMI does not

15   agree to your method of selecting an arbitrator, and will not, at this point, agree to a AAA

16   arbitrator check-off." *Id.*, Exh. M.

17         On February 5, 2008, the Union's counsel responded to the Company's January 22,

18   2008 letter, stating that it did "not agree with the Company's position that the Union's request

19   for a list of arbitrators from AAA is premature or otherwise improper." The Union offered to

20   meet with the Company to discuss these issues. *Id*., Exh. N.

21         The Company's response to the Union's invitation to meet was to file a petition in this

22   Court on February 15, 2008, seeking to vacate both awards issued by the arbitrator. *See* Petn. &

23   Mot. to Vacate Labor Arbitration Award (CV-08-0976-TEH) (Doc. No. 1). There has been no

24   other response to the Union's February 5, 2008 letter.

25         In its petition, the Company has again made clear that it refuses to arbitrate. Because

26   NUMMI refuses to proceed with an arbitrator other than the arbitrator who heard the merits

27   (Petn. at 3, 10 n.6, 16), but because that arbitrator is unavailable to preside over the remaining

28

1  remedy issues (Mays Decl., Exh. C at 23 & n.7), NUMMI has refused to arbitrate the

2  outstanding remedy issues arising from the Union's grievance.

3      NUMMI's petition to vacate has also made clear that the Company refuses to recognize

4  the validity of the arbitration awards.  Indeed, to date, the Company has done nothing to

5  implement the arbitrator's awards.  For example, it has refused to reinstate any of the

6  approximately 100 employees it terminated pursuant to the policy that the arbitrator found to

7  violate the contract.  Mays Decl. at ¶10.

8  **III.    ARGUMENT**

9      **A.    Federal Policy Strongly Favors Arbitration, Especially Of Labor Disputes**

10     Courts have long recognized the strong federal policy favoring arbitration of disputes,

11 especially in the labor context.  *See United Steelworkers of America v. American Mfg. Co.*, 363

12 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S.

13 574 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593

14 (1960).  That being so, with respect to actions seeking to compel arbitration, there is a strong

15 presumption in favor of arbitration and, with respect to actions seeking to confirm an arbitration

16 award, the award must be confirmed except in very narrow, unusual circumstances.

17     Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, provides a cause

18 of action for a party to a collective bargaining agreement to enforce an arbitration clause

19 contained in the CBA.  *See, e.g., Warrior & Gulf*, 363 U.S. at 582.  The only question where a

20 party seeks to compel arbitration is "whether the party seeking arbitration is making a claim

21 which on its face is governed by the contract."  *American Mfg.*, 363 U.S. at 568.  "An order to

22 arbitrate the particular grievance should not be denied unless it may be said with positive

23 assurance that the arbitration clause is not susceptible of an interpretation that covers the

24 asserted dispute.  Doubts should be resolved in favor of coverage."  *Warrior & Gulf*, 363 U.S.

25 at 582-83; *see also AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S.

26 643, 650 (1986) (discussing "presumption of arbitrability for labor disputes").

27     Section 301 also authorizes a court "to enforce . . . an arbitration award entered pursuant

28 to a collective bargaining agreement."  *Sheet Metal Workers Int'l Assn Local Union No. 359 v.*

*Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996). Judicial review of arbitration awards, however, "is both limited and highly deferential." *Id*. This is so because "[i]t is the arbitrator's construction which is bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*, similarly espouses a strong federal policy favoring arbitration.[3] The FAA, like Section 301, establishes a strong presumption of arbitrability. *See, e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *id.* ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). And the FAA, like Section 301, "supplies mechanisms for enforcing arbitration awards." *Hall Street Assocs., LLC v. Mattel, Inc.*, \_U.S.\_, 2008 WL 762537, *4 (Mar. 25, 2008). "Under the terms of §9, a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§10 and 11." *Id*. (quoting 9 U.S.C. §9).

**B.    The Court Should Issue An Order Compelling The Company To Arbitrate Remedy Issues Arising From The Union's Grievance Because The Arbitration Clause Covers The Parties' Dispute**

Section 301 and the FAA both require that NUMMI be ordered to arbitrate the remaining remedy issues arising from the Union's grievance. There can be no doubt that the broad arbitration clause in the parties' CBA covers their underlying contract dispute and, indeed, NUMMI has waived any argument that the dispute is not arbitrable having already participated in, and lost, the merits phase of the arbitration.

---

[3] The Ninth Circuit has not yet decided whether the FAA applies to labor agreements. *See Poweragent, Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1193 n.1 (9th Cir. 2004). The Supreme Court's decision in *Circuit City v. Adams*, 532 U.S. 105 (2001), likely compels the conclusion that it does. *Id.* at 119 ("Section 1 exempts from the FAA *only* contracts of employment of transportation workers.") (emphasis added). In any event, under either the FAA or Section 301, NUMMI should be required to return to arbitration on the remedy issues and the merits awards issued by the arbitrator affirmed.

**1.    NUMMI Should Be Ordered To Arbitrate Under Section 301**

Because the CBA contains "a customary arbitration clause," the strong presumption of arbitrability requires that NUMMI be ordered to arbitrate the outstanding remedy issues on the Union's grievance. *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1374 (9th Cir. 1984) (affirming order compelling arbitration of dispute over whether employer required to make trust fund contributions on behalf of certain employees, where CBA contained a "customary arbitration clause" providing for arbitration of disputes "involving or arising out of the meaning, interpretation, application or alleged violation of [the] Agreement"); *see also Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275, 1277 (9th Cir. 1982) (affirming district court order granting union's motion to confirm arbitration award and to compel arbitration of remedy issue).

The CBA in this case establishes an exclusive, multi-step "Problem Resolution Procedure," that culminates in "final and binding" arbitration and governs disputes "concerning the interpretation or application of any terms of this Agreement, or any other work-related problem." Mays Decl., Exh. A at 18, 23 (CBA, Art. X, Sec. 1.1 & Sec. 8). The underlying contract dispute between the parties centers on a provision of the contract relating to sick leave. The Union filed a grievance challenging a new sick leave policy implemented by the Company in fall 2005, pursuant to which it terminated approximately 100 employees. In the merits phase of the arbitration, the parties stipulated that the matter was properly submitted "for a final binding arbitration." Lye Decl., Exh. A at 14:15-22; *id.*, Exh. B at 275:12-21. The arbitrator found that employees have a right under the contract (Article XXIII, Section 9.3) to remain on sick leave for the full length of their "time for time" period and that the Company violated the contract by implementing its new policy in fall 2005 and "terminating employees whose entitlement to time for time leave had not been exhausted." Mays Decl., Exh. C at 23.

In other words, the arbitrator found that NUMMI has an obligation under the CBA to provide employees with sick leave for the full length of the "time for time period." By demanding that the parties arbitrate over the remedy, the Union "now seek[s] to enforce that contract obligation through the arbitral process." *Alpha Beta*, 736 F.2d at 1375. Like the

"customary arbitration clause" in *Alpha Beta* that governed the disputes involving the "meaning, interpretation, application or alleged violation" of agreement (736 F.2d at 1374), the CBA here applies broadly to any dispute "concerning the interpretation or application of any terms of this Agreement, or any other work-related problem." Mays Decl., Exh. A at 18 (CBA, Art. X, Sec. 1.1). The parties' dispute over employees' sick leave rights is a dispute over "the interpretation or application" of terms of the CBA, in particular, the sick leave provisions. Any argument that the dispute between the parties does not fall within the scope of the "customary arbitration clause" at issue here is "frivolous at best." *Alpha Beta*, 736 F.2d at 1376.

The arbitration clause only excludes disputes "where the Agreement specifically states that a certain matter shall not be subject to this Problem Resolution Procedure or where a certain matter is subject to other resolution procedures." Mays Decl., Exh. A at 18 (CBA, Art. X, Sec. 1.1). These exceptions do not apply because the contract nowhere specifies that disputes related to sick leave rights are exempt from the Problem Resolution Procedure or subject to another procedure. *Id.* at 65-66 (CBA, Art. XXIII, Sec. 9 [provisions governing sick leave]). Indeed, NUMMI has stipulated that the grievance was "properly" submitted "for a final binding arbitration." Lye Decl., Exh. A at 14:15-21. NUMMI also stipulated to the arbitrator retaining jurisdiction over remedy, thus acknowledging that any dispute over the remedy for the Union's grievance was, like the grievance itself, subject to arbitration. *Id.* at 14:24-15:3; *id.*, Exh. C at 295:4-8.[4] Where, as here, "the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator." *Local Union No. 370 v. Morrison-Knudsen Co., Inc.*, 786 F.2d 1356, 1358 (9th Cir. 1986).

In refusing to arbitrate, NUMMI informed the Union that it "does not agree to your method of selecting an arbitrator," and would not "agree to a AAA arbitrator check-off." Lye Decl., Exh. M at 2. NUMMI stated that "these circumstances," in which the arbitrator declined

---

[4] NUMMI acknowledges that the remedy issues "are closely intertwined with the issues already" decided in the merits phase. *See* Petn. & Mot. to Vacate Labor Arbitration Award, CV-08-00976-TEH, Doc. No. 1. at 12-13. That being so, no distinction can be made between remedy and merits; both are equally arbitrable.

1  jurisdiction over remedy after ruling on the merits, "have never come up before," and "there is

2  not a customary method of picking an arbitrator in this type of situation." *Id*. at 1.

3  But the "method of selecting an arbitrator" followed by the Union was consistent with

4  the arbitrator's opinion and the CBA.[5]  The crux of NUMMI's argument, therefore, is that the

5  CBA's arbitration clause does not apply to situations where the parties have an outstanding

6  dispute over the proper remedy for the union's grievance, but the arbitrator who ruled on the

7  merits is no longer available.  This argument is meritless.  The CBA expressly excludes certain

8  disputes.  *See, e.g.,* CBA, Art. XI, Sec. 2.2 (termination of employee during first 90 days "shall

9  not be subject to the Problem Resolution Procedure").  But "there is no language in the CBA

10 that expressly excludes from arbitration disputes" over remedy, where the arbitrator has

11 resigned after ruling on the merits.  *United Food & Commercial Workers Union, Local 770 v.*

12 *Geldin Meat Co.*, 13 F.3d 1365, 1369 (9th Cir. 1994) (reversing district court's denial of motion

13 to compel arbitration).  The arbitration clause – which governs "any" dispute "concerning the

14 interpretation or application of any terms of this Agreement" – is not only plainly susceptible of

15 but commands an interpretation that covers disputes over the remedy for a concededly

16 arbitrable grievance, even where the arbitrator who decided the merits issues has now become

17 unavailable.

18 Because it cannot be said with "positive assurance" that the CBA's arbitration clause

19 *excludes* disputes over remedy where the arbitrator has resigned, this Court should order

20

21

22 [5] In finding the Company's sick leave policy to violate the contract, the arbitrator

23 encouraged the parties to negotiate a resolution of the remedy issues but concluded that the
   parties retained "the right to seek arbitral resolution of any outstanding remedial issues arising

24 from the subject grievance before a different arbitrator, who shall be selected by mutual
   agreement *or selected in accordance with the parties' customary method of selecting an*

25 *arbitrator*."  Mays Decl., Exh. C at 23 & n.7. The customary method of selecting an arbitrator
   is that set forth in the CBA, which provides for the parties to select an arbitrator from a panel of

26 seven, to be furnished by AAA.  *Id.*, Exh. A at 21-22 (CBA, Art. X, Sec. 6.1-6.2).  After the
   Union's attempts to negotiate with NUMMI over remedy were unfruitful, the Union requested a

27 list from AAA of seven arbitrators.  Lye Decl., Exh. K.  The Union's request to AAA was the
   first step in the arbitrator selection process set forth in the CBA.

28

1  NUMMI to arbitrate and to proceed with the process of selecting an arbitrator set forth in the

2  CBA and already initiated by the Union.  *Warrior & Gulf*, 363 U.S. at 582.

### 2.    The FAA Also Requires NUMMI To Arbitrate The Remaining Remedy Issues Arising From The Union's Grievance

5          The analysis under the FAA commands the same result.  Section 4 of the FAA provides

6  a procedure for a party to a contract containing an arbitration clause to compel arbitration.  9

7  U.S.C. §4.  The FAA "leaves no place for the exercise of discretion by a district court, but

8  instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as

9  to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470

10 U.S. 213, 218 (1985) (emphasis in original).  As the Ninth Circuit has explained, the questions

11 before the court where a party seeks to compel arbitration are "limited to" "(1) whether a valid

12 agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

13 at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

14         NUMMI does not challenge the validity of the CBA or its arbitration clause, and so "the

15 FAA restricts [the Court's] review to deciding only whether the dispute is arbitrable, that is,

16 whether it falls within the scope of the parties' agreement to arbitrate."  *Id*.  The parties' dispute

17 over the merits of the Union's grievance (already decided in the Union's favor) and the

18 outstanding dispute over the proper remedy for the Company's violation of the contract present

19 a dispute over "the interpretation or application" of the CBA, in particular, its provisions on

20 sick leave, and thus plainly fall within the scope of the CBA's arbitration clause.  That being so,

21 NUMMI must arbitrate.

22         Any eleventh hour assertion by NUMMI, after having lost the merits of the Union's

23 grievance, that the remedy for that grievance is now suddenly not arbitrable, should be deemed

24 waived.  In *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994), the Ninth

25 Circuit held that "[o]nce a claimant submits to the authority of the arbitrator and pursues

26 arbitration, he cannot suddenly change his mind and assert lack of authority.  [The party] is

27 bound by the arbitrator's decision."  *Id*. at 1440.  Similarly, in *Roderick v. Mazzetti & Assocs.,*

28 *Inc.*, 2004 WL 2554453 (N.D. Cal. Nov. 9, 2004) (Patel, J.), the court explained that a party's

1    initiation of arbitration proceedings "renders the arbitration process binding." *Id.* at *5 ("A

2    *Nghiem* theory of waiver alone would likely compel this court to return the parties to

3    arbitration."). The rationale for this waiver rule is "animated by the obvious policy concern that

4    parties may not initiate arbitration and subsequently terminate due to adverse decisions by the

5    arbitrator." *Id.*; *see also Nghiem*, 25 F.3d at 1440 ("We have long recognized a rule that a party

6    may not submit a claim to arbitration and then challenge the authority of the arbitrator to act

7    after receiving an unfavorable result.") (internal quotation marks, citation omitted).

8        NUMMI expressly stipulated that the grievance was "properly" submitted for "a final

9    binding arbitration" and agreed that the arbitrator could retain jurisdiction over remedy. Lye

10   Decl., Exh. A at 14:15-15:3; *id.*, Exh. B at 275:12-21; *id.*, Exh. C at 295:4-8. Having submitted

11   to the arbitrator's authority to decide the merits *and remedy* issues arising from the Union's

12   grievance, NUMMI's gamesmanship in submitting the grievance to arbitration but then

13   suddenly resisting arbitration of remedy issues after having lost on the merits should not be

14   countenanced.

15       Nor is there any merit to the contention that because the CBA does not expressly

16   address the situation where an arbitrator resigns after ruling on the merits of a grievance,

17   NUMMI need not return to arbitration. In *Lufau v. Affiliated Computer Servs., Inc.*, 2006 WL

18   2619365 (N.D. Cal. Sept. 12, 2006) (Wilken, J.), the defendants "initiated arbitration

19   proceedings in compliance" with the arbitration agreement and the court ordered the plaintiff

20   "to proceed with arbitration . . . , as initiated by Defendants." *Id.* at *3, *4. The CBA here

21   requires the parties to select from a list of seven arbitrators furnished by AAA. CBA, Art. X,

22   Sec. 6.1-6.2. The Union has initiated that procedure, having already requested and received a

23   list of arbitrators from AAA. Lye Decl., Exhs. K, L. As in *Lufau*, the agreement here "provides

24   only one procedure" for selecting arbitrators. "The fact that no other procedure is specified

25   means that no other procedure is permissible." *Lufau*, 2006 WL 2619365 at *2. NUMMI

26   should therefore be ordered to proceed with the arbitrator selection process initiated by the

27   Union.

28

1    NUMMI seeks to avoid its contractual obligation to arbitrate because the arbitrator who

2    issued those awards has resigned.  (*See* Petn. & Mot. to Vacate Labor Arbitration Award, CV-

3    08-00976-TEH, Doc. No. 1.)  But the arbitrator's unavailability to preside over remedy

4    proceedings does not vitiate NUMMI's on-going obligation to arbitrate the contractual dispute

5    with the Union.  In *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006), the district court

6    ruled that an arbitration agreement became unenforceable after the arbitral forum – the National

7    Association of Securities Dealers ("NASD") – declined jurisdiction over the parties.  *Id.* at

8    1057.  Although the arbitration agreement at issue in the case "select[s] the rules of the NASD,

9    [it] does *not* state that the arbitration is to take place before the NASD itself.  Had the latter

10   been intended, the parties could easily have said so." *Id.* at 1059.  The Ninth Circuit therefore

11   reversed the district court's ruling that the parties were no longer bound to arbitrate "when the

12   NASD bowed out.  There is no evidence that naming of the NASD was so central to the

13   arbitration agreement that the unavailability of that arbitrator brought the agreement to an end.

14   Something more direct is required before we, in effect, annihilate an arbitration agreement." *Id.*

15   at 1061 (citations omitted); *see also see also McGuire, Cornwell & Blakey v. Grider*, 771 F.

16   Supp. 319, 320 (D. Colo. 1991) ("where the arbitrator named in the arbitration agreement

17   cannot or will not arbitrate the dispute, a court does not void the agreement [to arbitrate] but

18   instead appoints a different arbitrator"); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith*,

19   742 F. Supp. 1359, 1363, 1365 (N.D. Ill. 1990) (granting motion to compel because parties

20   remained obligated to arbitrate even though arbitration board to which they had submitted

21   dispute "decline[d] jurisdiction"); *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F.Supp.

22   904, 910-11 (S.D.N.Y. 1978) ("when the arbitrator selected by the parties cannot or will not

23   perform," parties remain obligated to arbitrate and selection of substitute arbitrator appropriate),

24   *aff'd*, 578 F.2d 1366 (2d Cir. 1978) (unpub.).

25       The parties' CBA in this case designates AAA as the entity that will provide a list of

26   arbitrators, from whom the parties will select an arbitrator; it does not require the arbitration to

27   take place before a particular arbitrator or require the arbitrator designated by the parties to hear

28   both merits and remedy phases.  Mays Decl., Exh. A at 21-24 (CBA, Art. X, §§5-10).  "Had the

1    latter been intended, the parties could easily have said so." *Reddam*, 457 F.3d at 1059.  There is

2    no evidence whatsoever that the selection of any single arbitrator to hear both merits and

3    remedy phases was "so central to the arbitration agreement that [arbitrator Askin's]

4    unavailability . . . brought the agreement [to arbitrate] to an end." *Id*.  Under these

5    circumstances, arbitrator Askin's decision to "bow[] out" of the remedy phase does not end the

6    parties' obligation to arbitrate the remainder of the dispute. *Id.* at 1061.  In contending that it

7    has no obligation to arbitrate the remainder of the dispute before a substitute arbitrator,

8    NUMMI effectively seeks to "annihilate" the parties' "arbitration agreement." *Id*.  Such a result

9    cannot be tolerated under the "strong federal policy favoring arbitration." *Chiron*, 207 F.3d at

10   1128.

11        The Union contends that the proper method for selecting a substitute arbitrator to hear

12   the remedy issues is the standard method for arbitrator selection set forth in the CBA.  For this

13   reason, the Union has already initiated that process by requesting a list of arbitrators from AAA.

14   To the extent, however, the Court concludes that the CBA's method for arbitrator selection

15   does not apply under these circumstances, Section 5 of the FAA authorizes the Court to provide

16   for a replacement arbitrator.[6]  As the court in *Astra Footwear* explained, Section 5 "was drafted

17   to provide a solution to the problem caused when the arbitrator selected by the parties cannot or

18   will not perform." 442 F.Supp. at 910.  In that case, the arbitral forum designated by the

19   agreement was not available.  The court granted the motion to compel arbitration and, relying

20   on its authority under Section 5 of the FAA, specified a procedure for designation of a

21   substitute arbitrator.  *Id*. at 910-11 (inviting parties to select alternate arbitrator and specifying

22

---

23        [6] Section 5 provides: "If in the agreement provision be made for a method of naming or
24   appointing an arbitrators or arbitrators or an umpire, such method shall be followed; but if no
     method be provided therein, or if a method be provided and any party thereto shall fail to avail
25   himself of such method, or if for any other reason there shall be a lapse in the naming of an
     arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either
26   party to the controversy the court shall designate and appoint an arbitrator or arbitrators or
     umpire, as the case may require, who shall act under the said agreement with the same force and
27   effect as if he or they had been specifically named therein; and unless otherwise provided in the
     agreement the arbitration shall be by a single arbitrator." 9 U.S.C. §5.
28

1    that court would designate one if parties failed to do so by date certain).  As in *Astra Footwear,*

2    the Court should order the parties to arbitrate and, to the extent the Court concludes that the

3    CBA's method for arbitrator selection does not apply to appointment of a substitute arbitrator,

4    the Court should, pursuant to the authority granted under Section 5 of the FAA, require the

5    parties to select by a date certain an arbitrator from the list already provided by the AAA, or

6    specify such other method for arbitrator selection as the Court deems appropriate.

7                                    *      *      *

8            In sum, the Court should order NUMMI to arbitrate the remedy issues and to proceed

9    with the arbitration process initiated by the Union in an expeditious manner.

10   **C.    The Court Should Confirm The Two Merits Rulings Issued By The**
     **Arbitrator**

11

12           Under both the FAA and Section 301, judicial review of arbitral awards is "both limited

13   and highly deferential." *Barnes v. Logan,* 122 F.3d 820, 821 (9th Cir. 1997) (citations omitted)

14   (FAA); *accord Sheet Metal Workers*, 84 F.3d at 1190 (Section 301).  And under both statutes, it

15   is equally plain that the two merits rulings issued by the arbitrator should be confirmed.[7]

16

17

18

19

20           [7] The arbitrator's merits awards are "final" and thus subject to judicial review for
21   purposes of confirmation.  Where, as here, the parties bifurcated the merits and remedy issues,
     the awards are final and subject to judicial confirmation because they reached all of the issues
22   submitted to the arbitrator in that phase of the proceeding. *See, e.g., Hart Surgical, Inc., v.*
     *Ultravision, Inc.,* 244 F.3d 231, 235 (1st Cir. 2001) (merits award final where parties agreed to
23   bifurcate); *see also* Opp. to Petn & Mot. to Vacate Labor Arbitration Award at (CV-08-0976-
24   TEH) (Doc. No. 17) at 8-10.  The Ninth Circuit has approvingly noted the bifurcation rule of
     finality consistently adopted by other circuits. *Millmen Local 550 v. Wells Exterior Trim*, 828
25   F.2d 1373, 1376 n.3 (9th Cir. 1987) ("An agreement to bifurcate might suggest that the parties
     and the arbitrator desired that each determination be final and binding.").  Although the Ninth
26   Circuit in *Millmen* found an arbitration award that reached merits but not remedy issues to be
27   not final and confirmable, the parties in that case "did not agree to bifurcate the liability-remedy
     determination." *Id.*  NUMMI agrees that the awards are "final" for purposes of judicial review.
28   *See* Petn. & Mot. to Vacate Labor Arbitration Award (CV-08-0976-TEH) (Doc. No. 1) at 9-10.

1     **1.    Under The FAA, The Court *Must* Confirm The Arbitration Awards Unless They Are Vacated**

2

3          Section 9 of the FAA requires a court to confirm an arbitration award unless it is

4     vacated, modified, or corrected. *See* 9 U.S.C. §9; *Hall Street Assocs.*, _U.S._, 2008 WL

5     762537 at *4.  NUMMI has brought a petition to vacate the arbitration awards in the related

6     action, Case No. CV-08-0976-TEH.  The only alleged defect to which the Company points is

7     that the arbitrator resigned from the matter before deciding the remedy issues.  NUMMI

8     attempts to parlay this fact into two separate legal arguments: First, that the award is not

9     "mutual, final and definite" and second, that the arbitrator exceeded his authority by supposedly

10    ordering the parties to arbitrate remedy before a substitute arbitrator.  For the reasons explained

11    in the Union's opposition to NUMMI's petition (Case No. CV-08-0976-TEH, Doc. No. 17),

12    these arguments are meritless and merely call attention to NUMMI's transparent effort to rid

13    itself of unfavorable decisions.

14         For example, although NUMMI insisted in the merits phase of the arbitration that the

15    arbitrator not reach any remedy issues, NUMMI now seeks to vacate the awards because the

16    arbitrator did precisely what NUMMI requested and indeed insisted upon – defer remedy issues

17    to a later phase.  Having affirmatively urged the arbitrator not to decide remedy, NUMMI

18    "cannot await the outcome and, after an unfavorable decision, challenge" the decision for

19    failure to resolve "that very issue." *Poweragent, Inc. v. Electronic Data Systems Corp.*, 358

20    F.3d 1187, 1192 (9th Cir. 2004) (corporation bound by arbitrators' decision on particular issue

21    after urging arbitrators to decide issue and "assert[ing] their authority to do so").  Further,

22    although NUMMI complains that arbitration of remedy issues before a substitute arbitrator will

23    create inefficiencies by forcing the parties to arbitrate before "a brand new arbitrator," it then

24    seeks to *vacate* the already-issued merits awards.  (Case No. CV-08-0976-TEH, Petn. & Mot. to

25    Vacate, Doc. No. 1 at 14.)  Vacating the merits decision would force the parties to relitigate the

26    merits and thus exacerbate the very problem of which NUMMI complains – thus demonstrating

27    that the Company's petition is a blatant attempt to try its luck again before "a brand new

28    arbitrator."

1    It has already taken two years (from fall 2005 to fall 2007) to litigate the merits of the

2    Union's grievance.  That process has already been delayed by one year because of the

3    Company's insistence that the merits issues be litigated seriatim rather than in a single hearing.

4    This is hardly the expeditious method for resolving disputes contemplated by the FAA.  *Cf.*

5    *Abernathy v. Southern California Edison*, 885 F.2d 525, 526 (9th Cir. 1989) ("arbitrations [are]

6    favored because of their efficiency in resolving disputed claims").  In the meantime, the

7    Company has refused to reinstate the approximately 100 employees whose terminations the

8    Company found to violate the CBA.  Mays Decl. at ¶10 & Exh. C at 7:12-13, 23:3-5.  And they

9    will continue to be left in limbo through any further delay.

10    Because there is no basis for vacating the merits awards, those awards "must" be

11    confirmed.  9 U.S.C. §9.

12

13    **2.    The Narrow Exceptions For Vacating A Labor Arbitration Award Under Section 301 Do Not Apply**

14    The same result obtains under Section 301.  The award must be confirmed unless one of

15    four narrow exceptions applies: "(1) when the award does not draw its essence from the

16    collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues

17    submitted; (3) when the award runs counter to public policy; and (4) when the award is

18    procured by fraud.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001).

19    None applies in this case.

20    There can be no argument that the award fails to "draw its essence" from the CBA.  The

21    parties provided the arbitrator with extensive arguments about the proper interpretation about

22    the "time for time" provision and the appropriate canons for construing ambiguous contract

23    provisions.  *See, e.g.,* Mays Decl., Exh. C at at 8-12 (summarizing parties' arguments).  The

24    arbitrator concluded "that there are plausible arguments for conflicting interpretations of the

25    meaning of Section 9.3 with respect to whether employees have a contractual right to the full

26    amount of sick leave before they can be terminated."  *Id.* at 14.  He then provided a detailed and

27    careful explanation of the role of the parties' conduct under the contract, also known as the

28    parties' "past practice," in construing ambiguous contract terms.  *Id.* at 15-21.  Based on "the

1    language of the contract, the 15-year Interpretive Past Practice, and the entire record," the

2    arbitrator then adopted the interpretation of the contract urged by the Union. *Id*. at 22. "It was

3    the arbitrator's construction which was bargained for; and so far as the arbitrator's decision

4    concerns construction of the contract" – as it does here – "the courts have no business

5    overruling him because their interpretation of the contract is different from his." *Enterprise*

6    *Wheel*, 363 U.S. at 599; *see also Line Drivers, Pickup and Delivery Local Union No. 81 v.*

7    *Roadway Express Inc.*, 152 F.3d 1098, 1100 (9th Cir. 1998) ("it is not the job of courts to

8    second-guess arbitrators").

9        Nor is there any plausible argument that the arbitrator exceeded the scope of the issues

10   submitted. Where, as here, the parties authorized the arbitrator to frame the issues (see Lye

11   Decl., Exh. C at 296:10-16, there can be no argument that the arbitrator exceeded his

12   jurisdiction. *Assn. of Western Pulp & Paper Workers, Local 78 v. Rexam Graphic, Inc.*, 221

13   F.3d 1085, 1089 (9th Cir. 2000). Moreover, this arbitrator in particular was especially

14   scrupulous about reaching only those issues over which both parties had delegated him

15   authority. For this reason, and although the Union hoped to expedite matters by addressing

16   both the Staudohar and the contract issue in the first merits proceeding, but because the

17   Company took the position that only the Staudohar issue was before the arbitrator, the arbitrator

18   addressed only that issue. This necessitated a second merits proceeding. In that proceeding, the

19   Union again hoped to expedite matters by addressing the contract issue and a legal issue

20   pertaining to remedy. But because the Company took the position that remedy issues should be

21   deferred, the arbitrator declined to reach any remedy issues. *See supra* Part II-C. "Because the

22   arbitrator only decided the issues agrees to by the parties, it cannot be said that the arbitrator

23   exceeded [his] authority." *United Food and Commercial Workers, Local 588 v. Foster Poultry*

24   *Farms*, 74 F.3d 169, 173 (9th Cir. 1995).

25       "General considerations of supposed public interest do not trigger the public policy

26   exception. The party seeking to vacate the arbitration award bears the burden of showing that

27   the arbitration award violates an explicit, dominant and well-defined public policy." *Id*. at 174

28

(internal quotation marks, citations omitted).  NUMMI cannot meet such a burden.  Similarly, there is no support whatsoever for any argument that the awards were procured by fraud.

*       *       *

In sum, under any analysis, the awards on the merits of the Union's grievance must be confirmed.

## IV.    CONCLUSION

For the foregoing reasons, NUMMI should be ordered to arbitrate in an expeditious manner the remedy issues arising from the Union's grievance, with a substitute arbitrator to be selected from the list already provided by AAA.  In addition, the arbitration awards that have already been issued on the merits of the Union's grievance should be confirmed.[8]

Dated:  April 14, 2008                              Respectfully submitted,

JONATHAN WEISSGLASS
LINDA LYE
Altshuler Berzon LLP


By:   /s/Linda Lye
            Linda Lye

Attorneys for Plaintiffs  International
Union, United Automobile, Aerospace and
Agricultural Implement Workers of America,
Local 2244 and International Union, United
Automobile, Aerospace and Agricultural
Implement Workers of America.

---

[8]The Union will bring a motion for attorney's fees, expenses, and costs, in the event the Court grants the Union's motion.  *See, e.g., Sheet Metal Workers Int'l Assn, Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1192 (9th Cir. 1996).