SEYFARTH SHAW LLP
Nick C. Geannacopulos (SBN 114822)
Christian J. Rowley (SBN 187293)
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549
ngeannacopulos@seyfarth.com
crowley@seyfarth.com

Attorneys for Plaintiff
NEW UNITED MOTOR MANUFACTURING INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 2244, and INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, <br><br> Plaintiffs, <br><br> v. <br><br> NEW UNITED MOTOR MANUFACTURING INC., <br><br> Defendant. | Case No.  C-08-1242-TEH <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND/OR MOTION TO COMPEL ARBITRATION AND CONFIRM ARBITRATION AWARDS** <br><br> Date:   May 19, 2008 <br> Time:  10:00 a.m. <br> Place:  Courtroom 12, 19th Floor <br>        Hon. Thelton E. Henderson |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... - 1 -

II.     SUMMARY OF THE ARGUMENT ............................................................... - 4 -

III.    ARGUMENT................................................................................................... - 6 -

    A.    The International Has No Standing to Compel Arbitration or Confirm the Awards. ............................................................................................................ - 6 -

    B.    Plaintiffs Cannot Meet Their Burden of Proving NUMMI Has Refused to Arbitrate. ....................................................................................................... - 6 -

        1.    NUMMI Has Not Refused to Arbitrate. ................................................ - 6 -

            a.    The Petition Does Not Indicate a Refusal to Arbitrate. ............... - 7 -

            b.    There is Not Other Evidence of a Clear Refusal to Arbitrate..... - 8 -

        2.    Plaintiffs' Claim that the Remedy is Arbtitrable is Accurate but Misplaced at This Point. ........................................................................ - 9 -

        3.    Plaintiffs Arguments About Forum Unavailability Are Likewise off Point. ............................................................................................... - 10 -

    C.    Plaintiffs Did not Follow the Pre-Requisites to Arbitration. ........................... - 11 -

    D.    The Court Should Deny Plaintiffs' Petition To Confirm, Because the Awards Must Be Vacated. ........................................................................... - 12 -

        1.    The FAA Applies Either Directly or Through Section 301 to the Cross Motions to Vacate/Confirm. ..................................................... - 12 -

        2.    Bifurcation of the Hearings Is Not Relevant to the Legal Issues. ........ - 13 -

        3.    The Arbitrator Had No Authority To Order Further Arbitration.......... - 14 -

    E.    Plaintiffs Arguments About Expediting the Arbitration Process Are Misplaced and Inaccurate. .......................................................................... - 17 -

        1.    NUMMI Has Legitimate Grounds To Vacate the Order and Delay is not the Issue. ...................................................................................... - 17 -

        2.    The Rule Proposed by NUMMI Will Not Delay the Proceedings Substantially. ....................................................................................... - 18 -

        3.    The Rule Proposed By NUMMI Furthers the Federal Interests in Prompt, Final Arbitration of Disputes .................................................. - 19 -

IV.    CONCLUSION ............................................................................................. - 20 -

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-TEH

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Fed'n of Television & Radio Artists v. WJBK-TV,*
    164 F.3d 1004 (6th Cir. 1999) ............................................................................. 13

*Astra Footwear Indus. v. Harwyn Int'l Inc.,*
    442 F. Supp. 904 (S.D.N.Y. 1978) ...................................................................... 10

*Circuit City Stores, Inc. v. Adams,*
    532 U.S. 105 (2001) .............................................................................................. 12

*ConnTech Dev. Co. v. Univ. of Conn. Educ.,*
    102 F.3d 677 (2d Cir. 1996) ................................................................................. 14

*Darrah v Friendly Ice Cream Corp.,*
    328 F. Supp. 2d 319 (N.D. NY 2004) .................................................................. 11

*Dighello v. Busconi,*
    673 F. Supp. 85 (D. Conn. 1987) *aff'd* 849 F.2d 1467 (2d Cir. 1988) ................ 2

*Edna H. Pagel, Inc. v. Teamsters Local Union 595,*
    667 F.2d 1275 (9th Cir. Cal. 1982) ....................................................................... 9

*Gas Aggregation Servs. V. Howard Avista Energy,*
    319 F.3d 1060 (8th Cir. 2003) ............................................................................... 2

*Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO v. Excelsior*
    *Foundry Co.,*
    56 F.3d 844 (7th Cir. 1995) ................................................................................. 13

*IBEW, Local Union No. 545 v. Hope Elec. Corp.,*
    380 F.3d 1084 (8th Cir. 2004) ............................................................................. 12

*Kennecott Utah Copper Corp. v. Becker,*
    186 F.3d 1261 (10th Cir. 1999) ...................................................................... 13, 15

*Local Union No. 370 of International Union of Operating Engineers v. Morrison-*
    *Knudsen Co.,* 786 F.2d 1356 (9th Cir. Idaho 1986) ............................................. 9

*McGuire, Cornwell & Blakey Girder,*
    771 F. Supp. 319 (D. Colo. 1991) ....................................................................... 10

*Orion Pictures Corp. v. Writers Guild of America, West, Inc.,*
    946 F.2d 722 (9th Cir. 1991) ............................................................................... 12

*Poweragent Inc. v. Elec. Data Sys. Corp.,*
    358 F.3d 1187 (9th Cir. 2004) ............................................................................. 12

*Reddam v. KPMG LLP,*
    457 F.3d 1054 (9th Cir. 2006) ............................................................................. 10

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-TEH

1  *Smart v. IBEW Local No. 702,*
       315 F.3d 721 (2d Cir. 2002), *citing inter alia, Local 36, Sheet Metal Workers Int'l*
2      *Ass'n, AFL-CIO v. Pevely Sheet Metal Co.*, 951 F.2d 947 (8th Cir. 1992) ......................12

3  *Steelworkers v. Warrior & Gulf Navigation Co.,*
       363 U.S. 574, 80 S. Ct. 1347 (1960) ...............................................................................2, 19
4

5  *Textile Workers v Lincoln Mills of Ala.,*
       353 U.S. 448 (1957) .............................................................................................................12

6  *Trade & Transport v. Natural Petrol Charterers,*
       931 F.2d 191 (2nd Cir. 1991) ..............................................................................................20
7

8  *UFCW, Locals 197 & 373 v. Alpha Beta Co.,*
       736 F.2d 1371 (9th Cir. Cal. 1984)........................................................................................9

9  *Zechman v. Merrill Lynch et al.,*
       742 F. Supp. 1359 (N.D. Ill. 1990)......................................................................................10
10

11                                    **STATE CASES**

12  *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,*
       107 Cal. App. 4th 516 (Cal. Ct. App. 2003)........................................................................15

13                                    **FEDERAL STATUTES**

14  Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1................................................................1

15  9 U.S.C. § 10(a)(4) ...............................................................................................................13

16  Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ...........................1

17  FRCP Rule 56  .......................................................................................................................7

18

19

20

21

22

23

24

25

26

27

28

1    Defendant New United Motor Manufacturing Inc. ("NUMMI") respectfully submits this

2    Memorandum in Opposition to the United Auto Workers Local 2244 ("Local 2244" or the

3    "UAW") and the UAW International's ("International" collectively "Plaintiffs") Motion for

4    Summary Judgment ("Plaintiff's Motion").  This Memorandum is supported by the Declarations

5    of Robert McCullough and Nick Geannacopulos filed herewith, the Exhibits filed by Plaintiffs in

6    support of their Motion, as well as NUMMI's Petition to Vacate, and the Reply Memorandum to

7    be filed at the appropriate time, in the related case *New United Motor Manufacturing v. the*

8    *United Autoworkers Local 2244* CV 08-0976 TEH.

9    Plaintiffs' Motion is legally and factually infirm, and should be denied for the reasons

10   stated below.  While NUMMI believes the Court should deny the Motion outright, at minimum,

11   there is material issue of fact and summary judgment is improper at this early stage.

12   **I.    INTRODUCTION**

13   Before addressing the merits of Plaintiff's Motion, it is helpful to review the core issues

14   in these proceedings, because Plaintiffs misunderstand or misconstrue the issues.  Succinctly

15   stated, this case and NUMMI's Petition to Vacate involve two legal questions that are, in large

16   part, issues of first impression in the Ninth Circuit (at minimum). Specifically, they are:

17   *Issue 1:*  Is a labor arbitration decision subject to vacation under the Federal
     Arbitration Act ("FAA"), 9 U.S.C. §§ 1 and/or Section 301 of the Labor
18   Management Relations Act, 29 U.S.C. § 185, where one or more of the following
     are true, the single arbitrator has: i) been selected to hear the entire grievance at
19   some point as expressly required by the written arbitration agreement, ii) been
     empowered by the parties to decide the entire grievance and in the word of
20   Plaintiffs' own counsel enter a "final and binding" decision as to the entire
     grievance at some point, iii) accepted jurisdiction over an entire grievance and
21   agreed to decide the entire grievance in a final and binding matter at some point,
     and yet, fails to complete his mandate and decide the entire grievance at some
22   point before quitting?[1]

23   NUMMI believes that under these facts the decisions must be vacated and the case re-

24   arbitrated before a single arbitrator mutually selected by the parties in the manner expressly

25   [1] The UAW argues extensively in its Opposition to NUMMI's Petition to Vacate, that this issue
     has been decided.  NUMMI disagrees and believes that the cases cited are distinguishable, for
26   reasons to be discussed in NUMMI's Reply to the UAW's Opposition to the Petition to Vacate.
     However, even if they are comparable, it is clear that the issue has not been decided in the Ninth
27   Circuit, and NUMMI thinks that it should be decided differently in this Circuit as to labor
     arbitrations, for the reasons partially noted herein and to be discussed in NUMMI's Reply.
28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-TEH

1  provided in the parties' collective bargaining agreement ("CBA").  *See Ex. A.* to Declaration of

2  Earlie Mays, submitted by Plaintiffs.  (NUMMI is not claiming, and has never claimed, that it

3  has no duty to arbitrate anything, as discussed later).  As one Court succinctly noted, "[t]he

4  arbitrator must 'resolve all issues submitted to the arbitration, and determine each issue fully so

5  that no further litigation is necessary to finalize the obligations of the parties under the award.'"

6  *Gas Aggregation Servs. V. Howard Avista Energy*, 319 F.3d 1060, 1069 (8th Cir. 2003) *quoting*

7  *Dighello v. Busconi*, 673 F. Supp. 85, 90 (D. Conn. 1987) *aff'd* 849 F.2d 1467 (2d Cir. 1988).

8       The UAW disagrees and, in effect, thinks that it makes no difference what the parties

9  agreed on when they granted the arbitrator jurisdiction, what the CBA requires, or whether the

10  arbitrator actually decides the grievance he was appointed to decide in its entirety in a final and

11  binding matter before quitting.  The Plaintiffs' current argument, and purported indignation at

12  NUMMI's Petition, are particularly ironic because earlier in the underlying arbitration, the UAW

13  essentially took the opposite position.    (Declaration of Nick C. Geannacopulos ¶¶ 2-3).

14  Specifically, when NUMMI suggested that the parties agree to replace the Arbitrator after he

15  issued the first decision, the UAW insisted that he had to hear the whole case and could not be

16  replaced before the end of the entire grievance arbitration process.  *Id.*  The UAW also advised

17  NUMMI that the parties' agreement required the Arbitrator to hear the whole case.  NUMMI, in

18  good faith, agreed to honor the parties' agreement and have the arbitrator decide the entire

19  grievance, as the contract required, despite its misgivings.   Nevertheless, Plaintiffs have done an

20  about-face and essentially assert that it really does not matter whether the arbitrator hears the

21  whole case, contrary to Local 2244's prior demand.

22       The outcome of this first issue has serious policy and practice ramification for the

23  litigants and for labor law in general.  As the Court knows, labor arbitrations are not exactly like

24  civil litigation, because, among other things, arbitrations generally arise in the context of a

25  mutually beneficial, ongoing working relationship between the litigants and often incorporate

26  issues other than just the contract.  *See Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S.

27  574, 80 S.Ct. 1347, 1352-53 (1960) ("The labor arbitrator performs functions which are not

28  normal to the courts; the considerations which help him fashion judgments may indeed be

- 2 -

1   foreign to the competence of courts. The labor arbitrator's source of law is not confined to the

2   express provisions of the contract, as the industrial common law - the practices of the industry

3   and the shop - is equally part of the collective bargaining agreement although not expressed in

4   it."). Because the parties have to continue to work together after the arbitration, the parties need

5   confidence that their agreements will be followed, need certainty when selecting an arbitrator

6   and vesting him with authority that he will eventually personally decide all of the issues he or

7   she agrees to decide, and need finality in the arbitration decisions from the selected arbitrator. It

8   is also important that <u>one arbitrator</u> decides all issues related to a case including remedy if

9   necessary. (McCullough Decl. ¶¶ 4-8). The remedy in a case is often fashioned to fit the

10  arbitrators' view of not only the law but the equities of the situation as gathered from the

11  proceedings to date in the context of the parties' relationship, as well as established notions

12  industrial justice. Elkouri & Elkouri, <u>How Arbitration Works</u>, Ch. 11, p. 623 (5th Ed., 1997) ("In

13  a sense, each collective bargaining relationship is a world of its own - a world that may be given

14  features of infinite variety under the virtually unlimited right of contract enjoyed by Americans.

15  The phrase 'each case must be decided on its own' does have a definite place in arbitration.").

16  Consequently, what is at issue here is not some esoteric point of law, it has critical importance to

17  NUMMI and the UAW as well as to other parties in a similar position.

18         *Issue 2:* Does an arbitrator exceed his authority under the FAA and/or Section
19  301 by ordering as a "remedy" that the parties arbitrate parts of the dispute with
    another arbitrator where the contract clearly provides for only one arbitrator to
20  enter a "final and binding" decision as to an entire grievance, one arbitrator is
    agreed on and accepts jurisdiction over the entire grievance, and that one
21  arbitrator is not granted any authority to divide up the grievance between multiple
    arbitrators without retaining any jurisdiction?

22      Again, an arbitrator's remedial authority stems from the contract and parties' grant of

23  authority. Neither the contract nor the parties gave the arbitrator the authority to divide up the

24  grievance in this case between multiple arbitrators as a "remedy." The Plaintiffs, by implication,

25  claim he did have that authority, but to support that claim, <u>they rely on the parties' prior</u>

26  <u>agreement to bifurcate the hearings before that arbitrator, which is true (and was noted in</u>

27  <u>NUMMI's Petition), but is also different than the question of whether **he was empowered to**</u>

28  **<u>bifurcate the issues between himself and someone else</u>**. It is not the dividing up of hearings

1  that matters; it is his quitting before deciding all issues in the arbitration as a whole in a final and

2  binding matter, as he was selected to do, as he agreed to do, as the UAW previously insisted he

3  do, and as the contract requires him to do.

4      Instead of focusing on these fairly straightforward questions, Plaintiffs advance a barrage

5  of superfluous arguments. For example, Plaintiffs argue repeatedly that NUMMI has refused to

6  arbitrate, and is seeking to "annihilate" the arbitration agreement; when, in fact, that is not true.

7  NUMMI is simply saying that, for the reasons noted above, the decisions should be vacated and

8  the parties, pursuant to their written and oral agreement, should pick another arbitrator who will

9  hear the entire grievance as the prior arbitrator had agreed to do, and the contract and law

10  requires, from start to finish (in one or more hearings as agreed by the parties or ordered by the

11  Arbitrator).

12      As discussed further below, NUMMI asks that the Court to deny Plaintiffs unilaterally

13  scheduled Motion for Summary Judgment. This Motion, which NUMMI asked Plaintiffs to

14  reschedule to a date after the parties had met and conferred on discovery, tried to narrow the

15  issues and set a reasonable briefing schedule for the Court, fails on the merits. (*See* NUMMI's

16  Request for Relief Pursuant to FRCP 56(f).) Even assuming it did not fail on the merits, at

17  minimum, it is premature as there are genuine issues of material fact at this very early stage in

18  the litigation, and NUMMI is entitled to some discovery as to those issues. Further, the issue of

19  what is to be arbitrated is contingent on the outcome of the cross actions to confirm/vacate the

20  arbitration awards, so the Court would be ordering the parties to arbitrate without deciding the

21  core issue of what, in effect, is to be arbitrated.

22  **II.    SUMMARY OF THE ARGUMENT**

23      To begin with, the International UAW has no basis to move to compel arbitration or

24  confirm the awards as it was not a party to the arbitration proceeding at issue. Consequently, the

25  Motion should be denied as to the International, without reference to the merits of the Motion.

26  The proper party is Local 2244.

27      Beyond that, Plaintiffs' Motion is factually and legally infirm on several independent

28  grounds. As to the Motion to Compel, first, there is no basis to compel arbitration as NUMMI is

- 4 -

1   not refusing to arbitrate.  NUMMI will arbitrate, and has never said otherwise--the issues are

2   whether the new arbitrator hears the whole grievance because the prior decisions were vacated or

3   only whatever issues were not decided by the prior arbitrator.  Further, to the extent that

4   Plaintiffs continue to claim that NUMMI is refusing to arbitrate, then discovery is warranted to

5   examine the basis for their, in NUMMI's view, misleading assertion.  Under the FAA or Section

6   301, therefore, there is, at minimum, a material issue of fact as to whether NUMMI has refused

7   to arbitrate, and this portion of the Motion is, at best, premature.

8           Second, Plaintiffs' reliance on the argument that the "remedy" is within the arbitration

9   clause and thus the motion to compel is warranted is misplaced.  Obviously, the "remedy" is

10  ultimately subject to arbitration, but that is not the issue.  The remedy, is not the basis of an

11  independent stand alone grievance that is subject to arbitration; it is a sub issue in the "time for

12  time" dispute, which has been arbitrated.  The arbitrator has ordered a partial remedy--it is,

13  among other things, further arbitration with someone else.  The issue before the Court is whether

14  his failure to decide all the issues he was empowered to decide before quitting, including fully

15  deciding the remedy, violates Section 10(a)(4) and whether his order of further arbitration was

16  beyond his power as an arbitrator.  The law cannot be that once an arbitrator accepts jurisdiction

17  over an entire dispute and is appointed based on that acceptance of jurisdiction over an entire

18  dispute, it makes no difference if he quits halfway through the process.

19          Third, assuming arguendo the Court rejects NUMMI's Petition to Vacate at the

20  appropriate time, there is (at minimum) a material issue of fact as to whether Plaintiffs have

21  complied with Arbitrator Askins' decision or the "customary process" prior to pursuing this

22  motion.

23          Finally, NUMMI believes that either the Petition to Vacate should be granted, and the

24  Motion to Confirm denied, or at minimum, the Court should allow discovery as to whether i) the

25  Agreement and past practice requires one arbitrator to hear an entire case once he accepts the

26  case, and ii) the Arbitrator had authority, under the Agreement or past practice, to order more

27  arbitration.  The Court could then set both the cross motions at a reasonable date so the Court

28  and parties have time to focus and fully brief the issues.  To avoid duplicating arguments

1  between multiple briefs, NUMMI incorporates herein its Petition and the Reply brief to be filed

2  in support of its Petition to Vacate the awards.

3  **III.    ARGUMENT**

4      A.    The International Has No Standing to Compel Arbitration or Confirm the
           Awards.

5
6      As a threshold matter, the International is not a party to the Arbitration at issue, and thus

7  is not a proper party to the summary judgment motion.  Plaintiffs seek to compel and confirm

8  arbitration on behalf of the International, although the International is not a party to the

9  underlying arbitrations.  There is no evidence of any grievance filed by the International related

10 to the remedy issues, nor is there evidence that it was a party to the underlying arbitration.

11 (McCullough Decl. ¶ 3; Geannacopulos Decl. ¶ 2).  Indeed, the International is not identified in

12 the two arbitration decisions, is not listed as a party in the caption to the arbitration decisions,

13 was not identified as a beneficiary of the decisions by the arbitrator, and did not specifically

14 appear as a party at the arbitration.  (*See* Exs. B & C to Mays Decl.)  At best, the UAW can argue

15 there is a material issue of fact as to whether the International is a party to the arbitration, which

16 makes summary judgment improper.

17     B.    Plaintiffs Cannot Meet Their Burden of Proving NUMMI Has Refused to
           Arbitrate.

18         1.    NUMMI Has Not Refused to Arbitrate.

19     Plaintiffs have jumped the gun on the Motion to Compel Arbitration.  Despite being told

20 again that NUMMI is not refusing to arbitrate, Plaintiffs have continued to force their Motion to

21 an early summary judgment hearing.

22     In any event, NUMMI's Vice President of Human Resouces and Legal, the lead

23 spokesperson for NUMMI for purposes of the arbitration at issue, has never advised Plaintiffs

24 that it would not arbitrate.  (McCullough Decl. ¶¶ 1,2 & 9).  Likewise, counsel for NUMMI has

25 never advised Plaintiffs that NUMMI will not arbitrate, and indeed Defense counsel has made

26 that clear again to Plaintiffs.  (Geannacopulos Decl. ¶ 2; *see* Declaration of Christian J. Rowley

27 in Support of Request for Relief Under FRCP 56(f), Exs. A-C).

28

- 6 -

Simply stated, <u>there is no issue that NUMMI will arbitrate, and it has never refused to arbitrate</u>. At core, the question is what will be arbitrated depending on the cross motions with regard to the issues raised in the Petition to Vacate. If the Petition to Vacate is granted, the parties will follow the contract's procedure and pick a new arbitrator to decide the entire grievance (in one or more hearings). If it is denied, then the parties will follow the procedure established by Arbitrator Askin (which may be slightly different than what is in the contract since it refers to "mutual agreement" and "customary procedure," but that is not an issue here, except to the extent that the Plaintiffs claim they followed that procedure as a basis for their Motion).

In any event, for summary judgment purposes, Plaintiffs must prove that there is no material issue of fact as to whether NUMMI is refusing to arbitrate. (FRCP Rule 56). Specifically, Section 4 of the FAA provides "***The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration <u>or the failure to comply therewith is not in issue</u>, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . ." 9 U.S.C. § 4. If the "failure to comply" is at issue, then summary judgment is not appropriate. There is nothing mandating a different result under Section 301. If there is no refusal to arbitrate, then obviously, there is no harm to the Plaintiffs, and the complaint to compel arbitration is misplaced.

      a.     The Petition Does Not Indicate a Refusal to Arbitrate.

Plaintiffs offer two arguments to support its claim that NUMMI is refusing to arbitrate. First, they assert that the Petition to Vacate indicates a refusal to arbitrate. This is not accurate, and indeed the Petition clearly assumes a duty to arbitrate following resolution of the Petition to Vacate. (*See, e.g.,* Petition to Vacate, fn 7). NUMMI was careful in the Petition not to suggest that it will not arbitrate, because regardless of whether it could make that argument (and it

- 7 -

1    believes it could have made that argument), it is not doing so.  NUMMI believes that the

2    decisions must be vacated, but that is not the same as a refusal to arbitrate.[2]

3                        b.    There is Not Other Evidence of a Clear Refusal to
                               Arbitrate.
4

5            Second, Plaintiffs refer to a letter from Defense counsel to Plaintiffs' counsel.

6    (Declaration of Linda Lye in Support of Plaintiffs' Motion for Summary Judgment, Ex. M).  To

     reiterate, on January 14, Plaintiffs' counsel advised NUMMI on less than one days' notice stating
7
     she was going to unilaterally request a AAA list the next day.  (*Id.* Ex. J).  There was no
8
     statement in her letter as to what specifically would be arbitrated, no request for a joint request to
9
     the AAA, no attempt to mutually agree on an arbitrator (as the arbitration decision requires), or
10
     to meet and confer regarding what would be arbitrated.[3]  *Id.*  The parties have never, to
11
     NUMMI's knowledge, used the procedure that Plaintiffs' counsel was suddenly using to select
12
     an arbitrator (i.e., one days notice, no meeting to discuss what might be arbitrated, a unilateral
13
     unauthorized request).  (McCullough Decl.  ¶ 11).  Plaintiffs' counsel then did not even wait for
14
     a response from NUMMI to this letter, but unilaterally requested an arbitrator list.  (Lye Decl.,
15
     Ex K).
16
             NUMMI responded in a January 22 letter. Lye Decl. Ex. M.  The letter did not say
17
     NUMMI would not arbitrate, indeed, in order to clarify the issues, NUMMI specifically asked
18
     Plaintiffs to state what they thought would be arbitrated.  *Id.*  NUMMI did make clear that it
19
     thought the UAW's sudden unilateral request to the AAA was not proper, and not in accord with
20
     the practice or the decisions (without waiving any objections).  As a result of these factors
21
     NUMMI said it "will not, at this point, agree to an Arbitrator check off." *Id.* (emphasis added).
22
     The letter did not state that NUMMI would not agree to arbitrate or never agree to a check off.
23
     _____
     [2] NUMMI had no choice but to file the Petition when it did file it. As the Court is aware, there
24   are strict time limits on requests to vacate an award, and so NUMMI did not have the luxury of
     waiting to see what the parties could work out, if anything.  As it was, NUMMI waited until
25   nearly the last possible minute to file the Petition, in an effort to give the parties, who were
     speaking directly on the issues, a chance to resolve the case.
26
     [3] The Letter also implied that NUMMI had not responded to the attached letter from the UAW,
27   when in fact, NUMMI had made considerable efforts to work with the UAW. (McCullough
     Decl. ¶¶ 11-15).
28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

2.      Plaintiffs' Claim that the Remedy is Arbitrable is Accurate
        but Misplaced at This Point.

In the Motion, Plaintiffs make the argument that "remedy" is not excluded from the arbitration procedure, and thus NUMMI and the UAW have to arbitrate remedy.  This is accurate; the parties do have to arbitrate the entire grievance at some point, including "remedy" issues, under either the FAA or Section 301.  But the Plaintiff are cleverly "mixing apples and oranges" here, as evidenced by the fact that not one of the cases they cite involves an analogous situation.[4]

There is no separate grievance as to remedy, pending that it has gone through the contractual grievance procedure.  The remedy issue is part of the Notice of Appeal that was filed by the Union as a sub issue within the broader time for time issues, which has already entered the arbitration process.  (See Art X, CBA, Ex. A. to Earlie Decl.)  Indeed, the remedy issue was already assigned to Arbitrator Askin by the parties for final and binding arbitration, **and he already issued the partial remedy of more arbitration with someone else.** (Plaintiffs' Motion at 11:12-20; 15:10-12 ("having submitted to the arbitrator's authority to decide the merits *and remedy* [sic] issues arising from the Union's grievance. . . .").

So the issue before the Court is whether the Arbitrator issued a remedy within his power and whether his decision must be vacated under Section 10(a)(4) and/or Section 301 because he failed to fulfill the mandate under which he was empowered to decide the grievance, including the remedy.  Once the parties know their rights as to the decisions being vacated or confirmed,

---

[4] *Edna H. Pagel, Inc. v. Teamsters Local Union 595*, 667 F.2d 1275 (9th Cir. Cal. 1982), for example, does not involve a situation where the arbitrator quit before fulfilling his mandate, or ordered further arbitration with someone else.  The case involves issues related to procedure and the binding effect, or not, of NLRB decisions.  It has no bearing on this case.  Similarly, *UFCW, Locals 197 & 373 v. Alpha Beta Co.*, 736 F.2d 1371 (9th Cir. Cal. 1984), relates to the arbitrability of trust fund dispute, among other things, and is not relevant to this case.  Likewise, *Local Union No. 370 of International Union of Operating Engineers v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1357 (9th Cir. Idaho 1986) simply states the general principle of arbitrarily, which NUMMI does not dispute.  Indeed, if anything, the language quoted by Plaintiffs supports NUMMI's position where "the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator." *Id.* at 1358.  The parties agreed to arbitrate the time for time dispute and it was submitted to the arbitrator, Arbitrator Askin, not some other arbitrator.  In short, none of these case addresses the substantive issues of once an arbitration has begun what happens if the arbitrator quits after accepting jurisdiction and orders arbitration with someone else.

1   they can arbitrate whatever issues remain.  Plaintiffs cite no case law, because there is none, to

2   support the premise that once a labor arbitrator takes jurisdiction he can quit before deciding the

3   entire grievance as he agreed to so, and enter a purportedly final and binding decision requiring

4   more arbitration with someone else as to the issues he was supposed to decide.

5           3.      Plaintiffs' Arguments About Forum Unavailability Are
                    Likewise off Point.
6
7           To reiterate, Plaintiffs state that "NUMMI seeks to avoid its contractual obligation to

    arbitrate because the arbitrator who issued those awards has resigned."  (Plaintiff's Motion 16:1-
8
9   2).  They then argue that forum unavailability is not a basis to refuse to arbitrate, citing the

    decision in *Reddam v. KPMG LLP*, 457 F.3d 1054 (9th Cir. 2006).
10
11          Again, however, Plaintiffs' argument is not accurate as to the facts, and not relevant as to

12  the law.  With regard to facts, NUMMI has never refused to arbitrate, as discussed extensively

    above.  With regard to the law, the *Reddam* case has no bearing on the situation in this Court.[5]
13
14  *Reddam* involves a case where one party, KPMG, was completely refusing to arbitrate because

    the NASD had declined jurisdiction at the outset.  KPMG argued that the parties' contract
15
16  required arbitration before a particular forum, and if the forum declined, there was no duty to

    arbitrate anything--the plaintiff was just out of luck.  The Ninth Circuit rejected that argument
17
18  primarily because it did not find that the alleged forum selection provision in the arbitration

    clause said what KPMG claimed it said (rather it merely required use of NASD rules rather than
19
20  an NASD forum).

21          In this case, by contrast, NUMMI is not arguing it has no duty to arbitrate, nor is it

22  refusing to arbitrate.  Further, the forum did not decline jurisdiction at the outset (if he had, the

    parties obviously would have picked a different arbitrator).  (McCullough Decl. ¶¶ 4-6).
23

24

25  ───────────────
    [5] Similarly, the other cases cited by Plaintiffs all involve situations where one party claimed no
    duty at all to arbitrate because the forum declined jurisdiction before the arbitration began or a
26  decision was issued.  *See, e.g., McGuire, Cornwell & Blakey Girder*, 771 F. Supp. 319, 320 (D.
    Colo. 1991); *Zechman v. Merrill Lynch et al.*, 742 F. Supp. 1359, 1363 (N.D. Ill. 1990); *Astra
27  Footwear Indus. v. Harwyn Int'l Inc.*, 442 F. Supp. 907, 910-11 (S.D.N.Y. 1978) [miscited in
    Plaintiff's brief as F. Supp. "904"].
28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

1    In summary, NUMMI has not refused to arbitrate, and the Motion to Compel arbitration

2    is premature and improper.  NUMMI did arbitrate, and once the Court determines the legal effect

3    of the decisions in that arbitration, the parties can proceed to arbitrate the whole grievance as

4    required by the contract (or if the Court confirms the awards, then just the remaining "remedy"

5    issues).

6    C.    Plaintiffs Did not Follow the Pre-Requisites to Arbitration.

7    Setting aside the fact that NUMMI has not refused to arbitrate, Plaintiffs do not come to

8    the Court with clean hands and have not followed the arbitrator selection procedure outlined in

9    the decisions or mandated by the parties' custom and contract.  Since Plaintiffs believe that the

10    arbitrator's decisions are valid, they should have followed the procedure in those decisions.

11    Failure to follow the prerequisites to arbitration is a basis to deny a Motion to Compel in some

12    circumstances.  *Darrah v Friendly Ice Cream Corp.,* 328 F Supp 2d 319 (N.D. NY 2004).

13    The Arbitrator's decision required the Arbitrator to be selected by "mutual agreement" or

14    in "accordance with the parties' customary method of selecting an arbitrator. (Exh. C to Mays

15    Decl. at 23). Plaintiffs claim they used the customary method of selecting an arbitrator by

16    unilaterally sending a letter, with one days' advance notice, to the AAA requesting a list of

17    arbitrators.  However, this is not the customary method of selecting an arbitrator, as referenced in

18    the Declaration of Robert McCullough, ¶¶ 11-12.  The parties have a grievance process which

19    they go through, which helps to narrow the issues, which did not happen in this case as to the

20    "remedy."  After a final meeting, there is a notice of appeal filed, and then the parties mutually

21    request a list of arbitrators in the time limits set out in the contract.  (CBA Art. X §6.1-6.2.)  The

22    parties do not customarily send demanding letters to the other party, and without waiting for a

23    reply or making any attempt to clarify the precise issue to be appealed to arbitration, unilaterally

24    demand a AAA list. (Moreover, throughout this time, NUMMI was directly conversing with the

25    UAW regarding the "time for time" issues, and attempting to get information from the Union as

26    to what the alleged "damages" were, to no avail. (McCulllough Decl. ¶¶ 12-15).

27    In short, to the extent that Plaintiffs come to the Court asserting that they have directly

28    followed the customary procedure, that representation is not accurate.  This issue may not be

- 11 -

ultimately dispositive, since it is easily cured, but insofar as Plaintiffs have asserted this claim as a basis for their motion (Pltfs' Memo. 22-23), it is untrue.

   D.   The Court Should Deny Plaintiffs' Petition To Confirm, Because the Awards Must Be Vacated.

   In asserting that the Arbitration awards should be confirmed, Plaintiffs rehash the arguments in their Opposition to Defendant's Petition to Vacate. Obviously, if the Court denies the Petition to Vacate, it should confirm the awards, and vice versa. To avoid duplicative briefings, therefore, and focus the issues, NUMMI incorporates it Petition to Vacate and Reply brief to be filed in that action.[6]

   Having said that, NUMMI will respond briefly to the main arguments raised by Plaintiffs. After addressing the threshold matter of the FAA's applicability, NUMMI will rebut the oft-repeated claim that bifurcation of the hearings is tantamount to authorizing the Arbitrator to quit before entering a final and binding decision. (Pltfs' Memo. At 19). Second, NUMMI will address whether the arbitrator exceeded the scope of his authority by ordering more arbitration. Finally, NUMMI will respond briefly to the policy arguments raised by Plaintiffs.

   1.   The FAA Applies Either Directly or Through Section 301 to the Cross Motions to Vacate/Confirm..

   The recent Supreme Court decision in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) appears to expand the scope of the FAA directly to labor agreements. *Adams*, 532 U.S. at 119 ("Section 1 exempts from the FAA only contracts of employment of transportation workers."); see *IBEW, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1097 (8th Cir.

---

[6] Plaintiffs argue that the award is "final" because of the bifurcation of liability and remedy in this case. NUMMI disagrees that the award is final for that reason, because, as Plaintiffs admit, the "liability" and "remedy" phases are intimately interrelated in this case, among other things. The reason the award is "final" in this case for purposes of the Motion to Confirm/Petition to Vacate is because the arbitrator quit, as addressed in NUMMI's Petition. *See Orion Pictures Corp. v. Writers Guild of America, West, Inc.*, 946 F.2d 722, 725 (9th Cir. 1991) (once an arbitrator has asserted jurisdiction, a district court generally may not review the arbitrator's rulings *until the arbitrator relinquishes jurisdiction* by issuing a final award) (emphasis added). Once the arbitrator quit, his decision became final for appeals purposes. *Smart v. IBEW Local No. 702*, 315 F.3d 721, 725-726 (2d Cir. 2002), *citing inter alia, Local 36, Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Pevely Sheet Metal Co.*, 951 F.2d 947, 949 (8th Cir. 1992). NUMMI will address this issue in more detail in its Reply to Plaintiffs' Opposition to NUMMI's Petition, as Plaintiffs seem to be confusing in their Opposition the issue of finality for purposes of appeal under the FAA with finality for purposes of determining whether Section 10(a)(4) is violated.

1   2004) citing *Textile Workers v Lincoln Mills of Ala.*, 353 U.S. 448, 451-52, (1957); *But See*

2   *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 n.1 (9th Cir. 2004) ("Circuit City

3   did not address a [collective bargaining agreement], and we have not considered, and do not here

4   consider, its application to such agreements.")   NUMMI believes (and the UAW apparently

5   agrees) that the FAA should apply to labor contracts where there is no conflict with Section 301,

6   and is prepared to brief that issue if the Court so desires.

7          However, NUMMI also believes that the Court need not resolve this issue, as under

8   Section 301 actions, the Court should look to FAA principles unless there is a clear dispute

9   between the two—and there probably is not a dispute in this case.[7] *See, e.g., Am. Fed'n of*

10  *Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (FAA guides labor

11  arbitration cases);  *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1268 n.3 (10th Cir.

12  1999) ("The Court was interpreting the Federal Arbitration Act, 9 U.S.C. § 1-16, but there is no

13  apparent reason why its conclusion should not apply equally to review of a labor-arbitration

14  award."); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO v. Excelsior*

15  *Foundry Co.*, 56 F.3d 844, 848 (7th Cir. 1995)  ("The Federal Arbitration Act . . . is used as a

16  source of principles to guide the formulation of a federal common law of labor arbitration under

17  Section 301").   Thus, under either the FAA or Section 301 incorporating the FAA, the

18  underlying arbitration should be vacated for the reasons stated in the Petition to Vacate.

19              2.      Bifurcation of the Hearings Is Not Relevant to the Legal
                       Issues.
20
          Again, Plaintiffs repeatedly argue that having agreed to bifurcate the hearings, NUMMI
21
    cannot complain if the arbitrator did not decide the remedy issue.  <u>NUMMI is not complaining</u>
22
    <u>that the Arbitrator did not fully and finally decide the remedy issue in the second hearing.</u>
23

24
    _____
25  [7] The one caveat is if the Court finds the FAA, (based on some non-labor arbitration decisions or
    rationale,) allows for an arbitrator to quit halfway through an arbitration, Section 301 is designed
26  to address labor arbitrability issues, and in the labor context it is particularly important for the
    parties to have one arbitrator decide remedy and liability. Thus, as to be discussed in NUMMI's
27  Reply brief, to the extent the FAA and Section 301 are not in accord on this issue, Section 301
    should trump the FAA and the Court should hold that an arbitrator cannot quit halfway through
28  an arbitration.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

1    NUMMI is complaining that the arbitrator quit before deciding the remedy issue and instead,

2    issued an order requiring further arbitration <u>with someone else</u>.

3        Again, once the Arbitrator accepted jurisdiction he had an obligation under Section

4    10(a)(4) to decide the entire case <u>at some point</u> in a final and binding matter so that both parties

5    were clear as to their obligations. 9 USC § 10(a)(4). "An award is mutual, definite and final if it

6    'resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further

7    litigation is necessary to finalize the obligations of the parties.' "*ConnTech Dev. Co. v. Univ. of*

8    *Conn. Educ.*, 102 F.3d 677, 686 (2d Cir. 1996) (quotations omitted).

9        The Arbitrator in this case quit without deciding all issues "<u>submitted to arbitration</u>"

10   fully. He did decide all issues submitted in a particular hearing, but NUMMI believes that is not

11   the issue. The parties submitted the entire grievance to arbitration, including remedy and

12   liability, and picked this arbitrator to decide the entire grievance. In simple terms, at the end of

13   the arbitration, this arbitrator was supposed to issue a "mutual, definite, and final" decision

14   (<u>whether that decision was one opinion or multiple opinions</u>) addressing all issues submitted to

15   arbitration fully so that no further litigation was necessary. Since he issued a final decision

16   without doing so, he failed to fulfill the terms of his authority, as set out in the contract and at the

17   arbitration, and thus his award (consisting of the two opinions to date) is incomplete and must be

18   vacated pursuant to Section 10(a)(4)—particularly given that Plaintiffs seem to admit that all the

19   issues in this case, including the ones not yet decided, are intertwined. (*See* Plaintiff's Motion at

20   fn 4). The alternative result would ignore the plain language of the Agreement, disregard the

21   longstanding past practice, render moot the parties' agreement in this case, ignore what the

22   arbitrator said he would do, and deprive NUMMI of the benefits that flow from having one

23   arbitrator decide an entire grievance as the contract/practice/agreement requires. (McCullough

24   Decl. ¶¶ 2-8).

25              3.    The Arbitrator Had No Authority To Order Further
                     Arbitration
26

27       As Plaintiffs recognize, the Arbitrator had only such authority as was granted him by the

     parties or contract. He cannot order a remedy that is not authorized. Plaintiffs seek to enforce
28

- 14 -

1    the remedy he ordered, which was to arbitrate with someone else the issue of remedy. He had no

2    power to make that order, as it was not authorized by the agreement, practice, or understanding

3    of the parties or arbitrator. He was personally supposed to decide the remedy, not pass it off to

4    someone else. (McCullough Decl ¶¶ 2-8). The effect of this is that the Court should vacate the

5    awards and remedy he entered as exceeding his authority. NUMMI will address this issue in

6    more detail in its Reply Brief, but to review briefly the salient points.

7                                  i.    Language

8            The arbitration clause at issue clearly states the parties shall select "an Arbitrator"(not

9    "Arbitrators") to hear the grievance. (Art. X § 6.2 (*Ex. A* to Mays Decl.). This "Arbitrator" is

10   empowered to decide any difference between the party that led to the arbitration. Art. X, § 7.1.

11   The Arbitrator also has no power to "add to, subtract from, or otherwise modify any of the

12   provisions of" the CBA. This Arbitrator is empowered to issue a "final and binding" decision on

13   the grievance, subject to the CBA's restriction on his/her authority.

14           As to the language used, the Court should presume that the parties meant to give terms

15   their "ordinary" and common sense" meaning. *See Klamath Water Users Protective Ass'n v.*

16   *Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), *cert. denied* 531 U.S. 812 (2000) ("[a] written

17   contract must be read as a whole and every part interpreted with reference to the whole, with

18   preference  given to reasonable interpretations. Contract terms are to be given their ordinary

19   meaning . . ..); *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 526

20   (Cal. Ct. App. 2003), *rev. denied,* 2003 Cal. LEXIS 4782 ("Courts must give a reasonable and

21   commonsense interpretation of a contract consistent with the parties' apparent intent."). Parties

22   also are assumed to have used their language in a contract carefully, and do not say one thing,

23   when they mean something else. As one arbitrator noted, "Parties are presumed to have known

24   what they were doing when adopted the language which they did to express their bargained

25   intent." *Kennecott Copper Corp.*, 70-2 ARB ¶ 8849, 5850 (1970).

26           Consequently, the parties' use of the singular "arbitrator," rather than plural "arbitrators"

27   indicates that they did not intend one grievance, which had gone through the entire arbitration

28   process, to be split up between multiple arbitrators. By the same token, nowhere in the CBA or

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

1    hearing did NUMMI give this Arbitrator authority to decide half of the case, quit, and pass the

2    rest off.  In short, the plain language of the CBA, which Plaintiffs ignore, provides for a single

3    arbitrator to hear the grievance, and the arbitrator has no power to order more arbitration as a

4    remedy.

5                               ii.    Contract Process

6        Second, the parties' contractual process for selecting an arbitrator also makes clear that

7    only one arbitrator hears the parties' unresolved grievances, at the conclusion of a long process.

8    Specifically, the parties' contract provides for one party to raise grievances with the other party,

9    which grievances are addressed through a series of steps.  (CBA Art X, *Ex. A.* to Mayes Decl.)

10   At Step 1 there is a written exchange of materials and joint investigation.  (CBA Art. X, Section

11   2).  Failing a resolution at that step, at Steps 2 and 3 there are various higher levels of

12   interactions.  If no resolution is reached, then at Step 4, there is a "Notice of Appeal" filed by a

13   party clearly setting out the issues, followed by an additional meeting, and a referral by either

14   party to arbitration for any remaining issues.  Thereafter, the parties "jointly request" a list from

15   the AAA, go through a check off process, and select an arbitrator to enter a final and binding

16   decision on the issues in the Notice of Appeal.  This contractual process clearly sets out a series

17   of steps taken by the parties to address, investigate, and defined the issues.  If there is no

18   resolution of the issues, then the Notice of Appeal defines the issues that the Arbitrator will

19   decide.

20       There is nothing in this process that allows for multiple arbitrators, or creates multiple

21   sets of appeals, or empowers one arbitrator to accept jurisdiction over the issues in the Notice of

22   Appeal and then farm out some of the case to a different arbitrator.  The process provides for,

23   and NUMMI and Plaintiffs are entitled to, one arbitrator to decide the case from start to finish.

24                              iii.    Mutual Understanding

25       Third, the parties' prior practice and understanding of the Agreement was that one

26   arbitrator is selected to decide an entire grievance. (McCullough Decl. ¶¶ 3-8).  Thus, to the

27   extent Plaintiffs argue that the language of the Agreement is not clear on its face, then the Court

28   should look at the parties' past practice in deciding this issue.  If the UAW disputes this fact (and

- 16 -

1  the Court finds the language unclear) then there is a material issue of fact which makes summary

2  judgment premature.

3                              iv.      Agreement in this Case.

4        Fourth, lest there be any doubt as to what the contract requires, one need look only at

5  what the parties and arbitrator had agreed on. The Union, in particular, made clear that this

6  arbitration was not for a "declaratory relief" opinion; rather the Union wanted the Arbitrator to

7  decide liability and remedy. (Tr. 290-91 (Submitted with NUMMI's Petition to Vacate).)

8  NUMMI agreed with the Union's position on this point as to the Arbitrator's authority.  (TR.

9  294-95).  The Arbitrator clearly stated that he would decide the remedy, unless the Employer

10  prevailed. (Tr. 304, 498. Plaintiff's Motion at 15:8-14).

11        In short, the Arbitrator was not authorized to order more arbitration before a different

12  arbitrator as a remedy after he accepted authorization over the entire grievance.  The Plaintiffs

13  seek to confirm an order of more arbitration, that the Arbitrator had no power to order.  This

14  arbitrator, not someone else, at some point was supposed to issue a final binding decision

15  submitting all issues submitted to arbitration.  He did not do so. The Court should vacate the

16  awards and remand to the parties to arbitrate the entire grievance with one arbitrator (in one or

17  more hearings) as required by the contract.

18        E.     Plaintiffs' Arguments About Expediting the Arbitration Process Are
               Misplaced and Inaccurate.
19
               1.     NUMMI Has Legitimate Grounds To Vacate the Order and
20                    Delay is not the Issue.

21        Finally, while not directly germane to the merits, Plaintiffs repeatedly make three

22  arguments warranting rebuttal. First, Plaintiffs argue that NUMMI's is unnecessarily delaying

23  the process, for the sake of delay, and has done so previously in the arbitration.  This is false.

24  NUMMI had no idea the Arbitrator was going to quit, and did not ask him to quit.  Further, as

25  even Plaintiffs admit, bifurcation of hearings is common, and this case involves complicated

26  contractual interpretation issues, past practice, bargaining history, multiple prior arbitration

27  decisions, and events that occurred, in many cases more than 15 years ago.  (*See* Exs. B & C to

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE

Mays Decl.)  To NUMMI, it made no sense to hear the entire complicated dispute in one hearing, particularly since NUMMI viewed initial issues as potentially dispositive of the entire dispute.

2.    The Rule Proposed by NUMMI Will Not Delay the Proceedings Substantially.

Second, Plaintiffs argue that presenting the case to another arbitrator will delay it further. Again, this is a red herring, as regardless of what happens, the parties are essentially going to have to reeducate the new arbitrator about the case and facts.  Further, since Plaintiffs continue to assert an issue as to what the contract or past practice requires in terms of calculating the leave times, the parties are going to retread many of the same issues again anyway.  Finally, the parties will have the added burden of arguing what the prior Arbitrator really meant and decided.  While it obviously may take a bit longer to arbitrate again, it is not the huge delay Plaintiffs suggest.

NUMMI's demand that the parties follow their arbitration procedure and have one arbitrator hear the entire case is not unusual or in bad faith as Plaintiffs make it seem.  Indeed, similar arbitration rules in other well regarded labor arbitration forums require the same result. For example, the labor rules of the American Arbitration Association state that, in cases such as the present where the arbitrator accepts jurisdiction and then quits before the end of the case, a new arbitrator must be appointed to hear the entire case again:

> If any arbitrator should resign, die, or otherwise be unable to perform the duties of the office, the AAA shall, on proof satisfactory to it, declare the office vacant.  Vacancies shall be filled in the same manner as that governing the making of the original appointment, and the matter <u>shall be reheard by the new arbitrator</u> unless the parties agree upon an alternative arrangement. *AAA Labor Arbitration Rules* at 18 (emphasis added).

While the AAA rules obviously do not govern this situation, they are persuasive evidence of the general principle, also embodied in Section 10(a)(4), that once an arbitrator accepts jurisdiction over a matter he must finish it as promised and issue a final and binding decision as to all matters over which he has jurisdiction.

- 18 -

3.    The Rule Proposed By NUMMI Furthers the Federal
Interests in Prompt, Final Arbitration of Disputes

Finally, Plaintiffs argue that the rule NUMMI espouses is contrary to the intent of the FAA and Section 301 in allowing expeditious resolution of the case. This is simply not accurate. What Plaintiffs are arguing, in fact, would seriously undermine the policy of prompt arbitration leading to a final, clear and binding decision. Under Plaintiffs' analysis, it does not matter what parties agreed when they select an arbitrator, what the contract requires the arbitrator to do, or what the arbitrator agrees to do when he or she takes the case. It also does not matter that there are serious policy reasons, in the context of labor arbitration, to have one arbitrator decide a case (including an expeditious resolution, coherence between the various rulings, and understanding of the entire dispute, the ability to craft a remedy to fit the equities of the case, and so forth).

Thus, under Plaintiffs' analysis, if the parties agree to bifurcate hearings in any way, then that fact, without more, relieves the arbitrator of his duty to fulfill his mandate to decide the entire dispute in a final and binding manner at some point, and he can quit halfway through without any explanation. Thus, not only will parties be forced to avoid bifurcating hearings (which in many cases is the most expeditious manner of resolving a case), at the time of appointment, they will have no certainty that the arbitrator they are picking is really going to decide the entire case. Arbitrators have different strengths and weaknesses, and parties need the certainty, when they chose an arbitrator and vest that arbitrator with a case, that he will ultimately decide the whole case. (McCullough Decl. ¶¶ 3-6).

Further, giving an arbitrator the power to order further arbitration with someone else as a remedy, where the parties did not agree to do that, will not make arbitration more expeditious or certain in the long run. Under Plaintiffs' analysis there is nothing to prevent the next arbitrator from ordering as a remedy "Arbitrate with someone else." While this is an extreme example, it shows why a rule allowing arbitrators to order more arbitration with someone else in simply untenable.

Again, in the long run, arbitration will not be expeditious if the arbitrator can quit before deciding remedy. So, while in this case, it may take longer to reach a resolution because the core

- 19 -

1    principle must be litigated, in the context of the parties' on going relationship, and in terms of

2    arbitration in general, it will be more expeditious.

3    **IV.    CONCLUSION**

4         NUMMI and the UAW have had a mutually beneficial bargaining relationship since

5    1986. (See Mays Decl. Ex. B. At 1). As the last remaining auto manufacturing plant in the

6    Western United States, NUMMI employs around 4,000 UAW members. *Id.* By working

7    together, the parties have managed to weather the economic difficulties of the United States auto

8    industry for the last 20 years.

9         However, as in any relationship, the parties have their disagreements, and as a result,

10   arbitrate many cases every year. It is critical, therefore, in the context of their relationship, that

11   the parties' arbitration procedure is followed as clearly set out in the contract. When NUMMI

12   and the UAW pick an arbitrator to hear an entire case, and vest that arbitrator with authority to

13   decide the entire case, they need to know with certainty that he will do so, or they can get

14   someone who will. The parties bargained for a procedure where one arbitrator decides all issues

15   in the grievance, because it is important to have one arbitrator hear the whole case, and they are

16   entitled to get the benefit of the their bargain. *See Steelworkers,* 80 S. Ct. at 1352-53 ("The labor

17   arbitrator is usually chosen because of the parties' confidence in his knowledge of the common

18   law of the shop <u>and their trust in his personal judgment to bring to bear considerations which are</u>

19   <u>not expressed in the contract as criteria for judgment</u>."). The law does not allow an arbitrator to

20   avoid deciding fully the matters he agrees to decide and order further arbitration, and adopting

21   such a rule would undercut the purposes of arbitration.

22        Based on the foregoing, NUMMI respectfully asks the Court to deny Plaintiffs' Motion

23   and enter judgment on NUMMI's Petition to Vacate.

24   Dated: April 28, 2008                                    SEYFARTH SHAW LLP

25

26                                                           By
27                                                               Christian J. Rowley
                                                             Attorneys for Plaintiff
28                                                           NEW UNITED MOTOR
                                                             MANUFACTURING INC.

- 20 -

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CASE NO. C-08-1242-THE